## COMMONWEALTH *vs.* MATTHEW J. MALONEY.

Essex. September 6, 2006. - October 24, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & CORDY, JJ.

*Motor Vehicle,* Operating under the influence, Habitual traffic offender. *Practice, Criminal,* Prior conviction, Confrontation of witnesses. *Constitutional Law,* Ex post facto law, Confrontation of witnesses. *Habitual Offender. Statute,* Construction, Retroactive application. *Evidence,* Prima facie evidence, Prior conviction.

Where a statute contained an obvious clerical error, this court departed from the statute's literal meaning in order to effectuate the Legislature's intent, and the rule of lenity did not require a construction that a superseded provision should apply on the ground that it technically remained part of the statute. [584-585]

This court concluded that a statute applied retroactively to the defendant's case, which was already pending in the trial court when the statute was enacted, where the Legislature clearly knew how to make the statute purely prospective in application and did not do so. [585]

This court concluded that St. 2005, c. 122, § 6A, as applied to the defendant's pending proceeding under G. L. c. 278, § 11A, to determine whether he had been convicted of three prior offenses of operating a motor vehicle while under the influence of an intoxicant (OUI), did not constitute an impermissible ex post facto law, where § 6A did not alter the legal rules of evidence regarding proof of a prior OUI conviction by allowing court records of conviction to be prima facie evidence of a conviction without corroborating evidence or live authenticating testimony, in that, construed properly, § 6A did not change the Commonwealth's burden of proving prior OUI convictions beyond a reasonable doubt or have the effect of lowering this burden by reducing the sufficiency of the evidence the Commonwealth must introduce [585-590]; and where, even if § 6A did alter the legal rules of evidence with regard to proof of a prior conviction, it would not be in order to convict the offender, because no conviction results from a § 11A proceeding [590-591].

This court concluded that St. 2005, c. 122, § 6A, as applied to the defendant's pending proceeding under G. L. c. 278, § 11A, to determine whether he had been convicted of three prior offenses of operating a motor vehicle while under the influence of an intoxicant (OUI), did not violate the due process and confrontation clauses of the Federal and State Constitutions, where § 6A, properly construed, did not allow proof of a prior OUI conviction based on mere identity of name, and where the use of certain public records to serve as prima facie evidence of a prior conviction, with or without live authenticating testimony, did not violate the confrontation

clause or principles of due process, because any of those public records was sufficient to prove the prior OUI conviction beyond a reasonable doubt. [591-592]

COMPLAINT received and sworn to in the Peabody Division of the District Court Department on October 11, 2005.

Questions of law were reported to the Appeals Court by *James J. O'Leary,* J. The Supreme Judicial Court granted an application for direct appellate review.

*Kenneth E. Steinfield,* Assistant District Attorney, for the Commonwealth.

*William J. O'Hare* for the defendant.

*William J. Meade,* for Massachusetts District Attorneys Association, amicus curiae, submitted a brief.

COWIN, J. This case requires us to examine St. 2005, c. 122, known as "Melanie's Law," which changed the law governing the prosecution of operating under the influence (OUI) offenses in Massachusetts. At issue are the amendments made by Melanie's Law to the procedure by which the Commonwealth may prove prior OUI convictions to enhance a defendant's sentence. We conclude that the amended OUI statute, as applied to the defendant in this case, does not violate the ex post facto, due process, or confrontation clauses of the Federal or State Constitutions.[1]

1. *Facts.* On October 11, 2005, a complaint issued in the Peabody Division of the District Court Department charging the defendant, Matthew J. Maloney, with OUI as a fourth offense in violation of G. L. c. 90, § 24 (1) (*a*) (1).[2] On October 28, 2005, the Governor signed into law an emergency act[3] entitled "An Act increasing penalties for drunk drivers in the Commonwealth," St. 2005, c. 122. On November 9, 2005, after a

---

[1]We acknowledge the amicus brief of the Massachusetts District Attorneys Association.

[2]The complaint also alleged a civil motor vehicle infraction not at issue here.

[3]The bill's preamble states: "Whereas, [t]he deferred operation of this act would tend to defeat its purpose, which is to increase penalties for drunk drivers in the Commonwealth, therefore it is hereby declared to be an emergency law, necessary for the immediate preservation of the public safety."

three-day jury trial, the defendant was convicted of operating a motor vehicle while under the influence of alcohol. Following this conviction, the defendant was entitled to a separate proceeding, pursuant to G. L. c. 278, § 11A, to determine whether he had been convicted of the three prior OUI offenses alleged in the complaint. The Commonwealth, seeking clarity whether the amendments of Melanie's Law would apply to this proceeding, moved to report the question to the Appeals Court pursuant to Mass. R. Crim. P. 34, as amended, 442 Mass. 1501 (2004).[4] The trial judge allowed the motion and reported the following two questions to the Appeals Court:

> (1) Would application to cases now pending in the trial court of St. 2005, c. 122, § 6A, amending G. L. c. 90, § 24,[5] violate State or Federal constitutional prohibitions of ex post facto laws, specifically, the fourth category of such laws as set forth in *Calder* v. *Bull,* 3 Dall. 386, 390 (1798)?[6]

> (2) Would the introduction of documentary evidence of the types listed in St. 2005, c. 122, § 6A, be sufficient to sustain a finding of a prior conviction when it demonstrates, through corroborating identifying information such as date of birth, address, social security number, or distinguishing physical characteristics, that the defendant is the same person as that named in the prior conviction, or must the Commonwealth in all cases present live witnesses to establish that fact?

---

[4] "If, prior to trial, or, with the consent of the defendant, after conviction of the defendant, a question of law arises which the trial judge determines is so important or doubtful as to require the decision of the Appeals Court, the judge may report the case so far as necessary to present the question of law arising therein. If the case is reported prior to trial, the case shall be continued for trial to await the decision of the Appeals Court." Mass. R. Crim. P. 34, as amended, 442 Mass. 1501 (2004).

[5] There appears to be a typographical error in the question as reported. The question refers to section "24(c)"; however, there is no such section.

[6] As discussed further below, the fourth category of impermissible ex post facto laws recognized by the United States Supreme Court in *Calder* v. *Bull,* 3 Dall. 386 (1798), comprises "[e]very law that alters the legal rules of evidence, and receives less or different testimony than the law required at the time of the commission of the offence, in order to convict the offender." *Id.* at 390.

We allowed the parties' joint application for direct appellate review.

2. *Legal framework.* General Laws c. 90, § 24, is the Massachusetts OUI statute. Section 24 (1) (*a*) (1) makes it a crime to operate a motor vehicle on a public way while under the influence of an intoxicant, and sets forth more severe penalties for those convicted of second or subsequent offenses. In order to subject a repeat OUI offender to these greater penalties, the Commonwealth must prove the prior convictions in a separate proceeding pursuant to G. L. c. 278, § 11A. This statute governs the proof of repeat offender enhancements generally, and provides, in part:

> "If a defendant is charged with a crime for which more severe punishment is provided for second and subsequent offenses, and the complaint or indictment alleges that the offense charged is a second or subsequent offense, the defendant on arraignment shall be inquired of only for a plea of guilty or not guilty to the crime charged . . . . If a defendant pleads guilty or if there is a verdict or finding of guilty after trial, then before sentence is imposed, the defendant shall be further inquired of for a plea of guilty or not guilty to that portion of the complaint or indictment alleging that the crime charged is a second or subsequent offense. If he pleads guilty thereto, sentence shall be imposed; if he pleads not guilty thereto, he shall be entitled to a trial by jury of the issue of conviction of a prior offense, subject to all of the provisions of law governing criminal trials. . . . Upon the return of a verdict, after the separate trial of the issue of conviction of one or more prior offenses, the court shall impose the sentence appropriate to said verdict."

*Id.* Proceedings under this section are "subject to all of the provisions of law governing criminal trials," *id.*, and the Commonwealth must prove prior convictions beyond a reasonable doubt. *Commonwealth* v. *Pagan*, 445 Mass. 161, 174 (2005).

a. *Proof of prior OUI convictions before enactment of Melanie's Law.* Before the enactment of Melanie's Law, G. L. c. 90, § 24 (4), inserted in 1986, governed proof of prior OUI convictions. See St. 1986, c. 620, § 13. After several amendments not relevant here, this section provided:

"In any prosecution commenced pursuant to this section, introduction into evidence of a prior conviction or prior finding of sufficient facts by either original court papers or certified attested copy of original court papers, accompanied by a certified attested copy of the biographical and informational data from official probation office records, shall be prima facie evidence that a defendant has been convicted previously or assigned to an alcohol or controlled substance education, treatment, or rehabilitation program because of a like offense by a court of the commonwealth one or more times preceding the date of commission of the offense for which said defendant is being prosecuted."

G. L. c. 90, § 24 (4), as amended through St. 2003, c. 28, §§ 1-7; St. 2003, c. 26, §§ 228, 229. Although § 24 (4) did not require introduction of live testimony to authenticate conviction records, it apparently became a common practice in some courts to require such live testimony — a practice the Commonwealth considered burdensome.[7]

b. *Prima facie evidence.* Section 24 (4) provided that a court record of a prior conviction, accompanied by other documentation, would be "prima facie evidence" that a defendant had been convicted previously. In criminal cases, when evidence "A" is prima facie evidence of fact "B," then, in the absence of competing evidence, the fact finder is permitted but not required to find "B" beyond a reasonable doubt. See *Commonwealth* v. *Lykus*, 406 Mass. 135, 144 (1989); *Commonwealth* v. *Pauley*, 368 Mass. 286, 291-292, appeal dismissed, 423 U.S. 887 (1975). A number of Massachusetts criminal statutes designate certain evidence as "prima facie." See, e.g., G. L. c. 22C, § 39 (certificate of chemical analysis of narcotics is prima facie evidence of composition, quality, and weight); G. L. c. 269, § 11C (defendant's possession of firearm with obliterated serial number is prima facie evidence that defendant obliterated it).

Such provisions serve to identify evidence that the Commonwealth may introduce to meet its burden and which, while just as probative as other evidence, is less burdensome to

---

[7]While some Appeals Court decisions refer to this use of live witness testimony, see, e.g., *Commonwealth* v. *Downs*, 53 Mass. App. Ct. 195, 200 (2001), no case requires it. See discussion *infra.*

produce. See, e.g., *Commonwealth* v. *Verde*, 444 Mass. 279, 280 n.1 (2005) (use of narcotics analysis certificates "reduce[s] court delays and the inconvenience of having the analyst called as a witness"). They do not, however, alter the Commonwealth's substantive burden of proof, render admissible any evidence that previously was inadmissible, or render sufficient any evidence that necessarily was insufficient beforehand. Rather, when properly employed by the Legislature, such provisions are merely a matter of administrative convenience that eliminate uncertainty as to what will constitute sufficient proof. Accordingly, we have held that the Legislature's decision that "A" is prima facie evidence of "B" does not impermissibly lower the Commonwealth's burden of proof, at least where "A" is enough to establish "B" beyond a reasonable doubt. See *Commonwealth* v. *Pauley*, *supra* at 296-298.

In *Commonwealth* v. *Koney*, 421 Mass. 295 (1995), we added a gloss to the "prima facie" aspect of § 24 (4). In that case, the Commonwealth sought to prove the defendant's prior OUI offenses through several "packets" of court documents indicating that a Roger A. Koney had been convicted previously of OUI. *Id.* at 301. However, there was no evidence other than identity of name connecting these documents to the defendant. *Id.* In finding the evidence insufficient, we stated:

> "It was incumbent on the Commonwealth to prove . . . that the defendant, Roger A. Koney, who was in the courtroom was the same Roger A. Koney named in the three prior convictions. . . . This the Commonwealth did not do. Mere identity of name is not sufficient to indicate an identity of person." (Citation omitted.)

*Id.* at 301-302. In effect, we read into § 24 (4) a requirement that documentation reflecting a conviction be linked to the defendant before such documentation can be prima facie evidence of a conviction.

c. *Changes effected by Melanie's Law to proof of prior OUI convictions.* Statute 2005, c. 122, § 6A, replaced G. L. c. 90, § 24 (4),[8] with the following:

> "In any prosecution commenced pursuant to this sec-

---

[8]As discussed further below, because of a clerical error, § 6A states that it

tion, introduction into evidence of a prior conviction or a prior finding of sufficient facts by either certified attested copies of original court papers, or certified attested copies of the defendant's biographical and informational data from records of the department of probation, any jail or house of correction[], the department of correction, or the registry, shall be prima facie evidence that the defendant before the court had been convicted previously or assigned to an alcohol or controlled substance education, treatment, or rehabilitation program by a court of the commonwealth or any other jurisdiction. Such documentation shall be self-authenticating and admissible, after the commonwealth has established the defendant's guilt on the primary offense, as evidence in any court of the commonwealth to prove the defendant's commission of any prior convictions described therein. The commonwealth shall not be required to introduce any additional corroborating evidence, nor live witness testimony to establish the validity of such prior convictions."

St. 2005, c. 122, § 6A.

A comparison of the former G. L. c. 90, § 24 (4), and § 6A of Melanie's Law reveals several key distinctions. First, whereas the former § 24 (4) provided that court records of a prior conviction *"accompanied by* a certified attested copy of the biographical and informational data from official probation office records" (emphasis added) would be prima facie evidence of the prior conviction, § 6A provides that *either* court records of conviction *"or* certified attested copies of the defendant's biographical and informational data" (emphasis added) shall be prima facie evidence. Second, § 6A expands the types of documents that can have prima facie effect to include records from any jail, house of correction, the department of correction, or the registry of motor vehicles. Finally, § 6A adds language stating that documentation acceptable as prima facie evidence of a prior conviction shall be self-authenticating and admissible "to prove the defendant's commission of any prior convictions

replaces a different provision of the statute.

described therein," without corroborating evidence or live testimony.[9]

3. *Threshold issues.* Before turning to the reported questions, we address first two threshold issues raised by the defendant as to whether Melanie's Law applies here at all.[10]

First, due to an apparent clerical error, St. 2005, c. 122, § 6A, states that it replaces G. L. c. 90, § 24 (1) (c) (4), a completely different provision of the statute concerning the reinstatement of licenses by the registrar of motor vehicles, rather than G. L. c. 90, § 24 (4). Thus, it seems, the current OUI statute includes both § 24 (4) and the new language of § 6A, although both sections deal with the same subject matter in similar terms and § 6A clearly seems intended to replace § 24 (4).

We cannot conclude that the Legislature intended such an illogical result. Nor do we infer the Legislature's ratification of this error from the mere fact that it has yet to be corrected. See *Boston Gas Co.* v. *Department of Pub. Utils.*, 405 Mass. 115, 119 (1989) (refusing to ascribe significance to legislative inaction). Where, as here, a statute contains an obvious clerical error, a court may depart from the statute's literal meaning in order to effectuate legislative intent. *Cohen* v. *Commissioner of the Div. of Med. Assistance*, 423 Mass. 399, 409 (1996), cert. denied sub nom. *Kokoska* v. *Bullen*, 519 U.S. 1057 (1997), citing 2A Singer, Sutherland, Statutory Construction §§ 47.37, 47.38 (5th ed. 1992). See *State* v. *Murgatroy*, 115 N.H. 717, 718 (1975) (court would disregard negligent homicide statute's mistaken reference to wrong section number so as not to defeat legislative intent). Accordingly, we read § 6A of Melanie's Law as replacing G. L. c. 90, § 24 (4), not § 24 (1) (c) (4).

The defendant argues that under the "rule of lenity," any ambiguity in a criminal statute should be construed in the

---

[9]The defendant observes that § 6A refers to proof that "the defendant before the court" was convicted previously, whereas the former § 24 (4) referred simply to "a defendant." We deem this merely a semantic change, as the only "defendant" relevant to the former § 24 (4) was the one before the court.

[10]In answering questions reported under Mass. R. Crim. P. 34, we first address any potentially dispositive preliminary questions. See *Commonwealth* v. *Paasche*, 391 Mass. 18, 21-22 (1984) (declining to answer reported questions where potentially dispositive threshold issue was not briefed or argued).

criminal defendant's favor. See *Youngworth* v. *Commonwealth*, 436 Mass. 608, 611 (2002). He claims that because, read literally, both § 24 (4) and § 6A of Melanie's Law are now part of the OUI statute, he should have the benefit of the more lenient version. However, the rule of lenity "is a guide for resolving ambiguity, rather than a rigid requirement that we interpret each statute in the manner most favorable to defendants." *Commonwealth* v. *Roucoulet*, 413 Mass. 647, 652-653 (1992), quoting *Commonwealth* v. *Tata*, 28 Mass. App. Ct. 23, 26 (1989). In criminal cases no less than in civil, "[w]here the draftsmanship of a statute is faulty or lacks precision, it is our duty to give the statute a reasonable construction." *Commonwealth* v. *Pagan*, 445 Mass. 315, 319 (2005), quoting *Capone* v. *Zoning Bd. of Appeals of Fitchburg*, 389 Mass. 617, 622 (1983). We thus reject the defendant's argument that the former § 24 (4) should apply to this case on the ground that it technically remains part of the statute.

As a second threshold matter, the defendant contends that § 6A does not apply retroactively to a case such as his, which was already pending in the trial court when Melanie's Law was enacted. The statute does not answer this question directly; however, in contrast to the 1986 amendments to the OUI statute, St. 1986, c. 620, § 23, which applied only "to violations committed on or after the effective date of this act," Melanie's Law contains no such limitation. Because the Legislature clearly knew how to make § 6A purely prospective in application and did not do so, it is proper to apply § 6A to the present case.[11]

4. *Ex post facto clause.* We now address the first question reported by the trial court: whether § 6A of Melanie's Law, St. 2005, c. 122, § 6A, if applied to the defendant's pending proceeding under G. L. c. 278, § 11A, constitutes an impermissible ex post facto law. We conclude that it does not.

Both the Federal and State Constitutions forbid ex post facto laws. See art. I, § 10, of the United States Constitution ("No

---

[11]The defendant argues also that, because the present § 24 (4), like its predecessor, applies "[i]n any prosecution commenced pursuant to this section" and because the defendant's prosecution was "commenced" when the former § 24 (4) was still in effect, he is not subject to the present § 24 (4). However, "commenced pursuant to this section" merely means a prosecution under G. L. c. 90, § 24, not a particular historical version of the statute.

State shall . . . pass any . . . ex post facto law . . .''); art. 24 of the Massachusetts Constitution ("Laws made to punish for actions done before the existence of such laws, and which have not been declared crimes by preceding laws, are unjust, oppressive, and inconsistent with the fundamental principles of a free government"). We have interpreted the Federal and State ex post facto clauses identically. *Santiago* v. *Commonwealth*, 428 Mass. 39, 41, cert. denied, 525 U.S. 1003 (1998). In the seminal case of *Calder* v. *Bull*, 3 Dall. 386, 390 (1798) (*Calder*), the United States Supreme Court enumerated four categories of ex post facto laws:

> "1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment and inflicts a greater punishment than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less or different testimony than the law required at the time of the commission of the offence, in order to convict the offender."

We must decide whether § 6A falls under *Calder*'s fourth category.[12]

While *Calder* broadly forbids any law that retroactively "alters the legal rules of evidence, and receives less or different testimony . . . in order to convict the offender," *id.*, subsequent cases have made it clear that not every change in the rules of evidence falls under *Calder*'s fourth category. See *Thompson* v. *Missouri*, 171 U.S. 380, 386-387 (1898) (no ex post facto violation where defendant was convicted based on handwriting exemplars that were admissible due to intervening change in rules of evidence); *Hopt* v. *Utah*, 110 U.S. 574, 589-590 (1884) (no ex post facto violation where defendant was convicted based on testimony of convicted felon made competent to testify by intervening change in law). Rather, the Supreme Court has determined that only retroactive changes to the burden of proof

---

[12]This is the only ex post facto issue reported by the trial court and argued in the parties' briefs.

necessary to convict a defendant, or to the sufficiency of the evidence required to meet that burden, constitute violations of *Calder*'s fourth category.[13]

The recent case of *Carmell* v. *Texas*, 529 U.S. 513 (2000), is instructive. There, the Supreme Court found a fourth category violation where a defendant was convicted of sexual assault based on the victim's uncorroborated testimony, which would have been legally insufficient at the time of the offense but which was rendered legally sufficient at the time of the trial by a change in the law. In holding that this intervening change "alter[ed] the legal rules of evidence . . . in order to convict" the defendant, the Supreme Court emphasized that it "changed the quantum of evidence necessary to sustain a conviction." *Id.* at 530. The Court described *Calder*'s fourth category as forbidding laws that "subvert[] the presumption of innocence" by "reducing the quantum of evidence required to convict an offender[,] . . . retrospectively eliminating an element of the offense, increasing the punishment for an existing offense, or lowering the burden of proof." *Id.* at 532. To distinguish *Thompson* v. *Missouri, supra,* and *Hopt* v. *Utah, supra,* the *Carmell* Court focused on the distinction between laws that impermissibly lower the level of sufficiency of evidence required to convict and those that "merely 'regulat[e] . . . the mode in which the facts constituting guilt may be placed before the jury.' " *Carmell* v. *Texas, supra* at 545, quoting *Hopt* v. *Utah, supra* at 590. Thus, the *Carmell* decision clarified that *Calder*'s fourth category is meant to encompass only those laws that alter retroactively the government's burden of proof or the sufficiency of the evidence necessary to convict a defendant.[14]

With this in mind, we consider whether § 6A "alters the

---

[13]Despite subtle differences, "laws that lower the burden of proof and laws that reduce the quantum of evidence necessary to meet that burden . . . are indistinguishable in all meaningful ways relevant to concerns of the Ex Post Facto Clause." *Carmell* v. *Texas*, 529 U.S. 513, 541 (2000).

[14]We apply the same principle in our cases on *Calder*'s fourth category. Compare *Commonwealth* v. *A Juvenile*, 413 Mass. 148, 151 (1992) (statute retroactively allowing proceedings against certain juveniles by indictment rather than probable cause hearing was impermissible ex post facto law because it lowered Commonwealth's burden of proof), with *Commonwealth* v. *Greenberg*, 339 Mass. 557, 579 (1959) (intervening extension of "business records" exception to hearsay rule, allowing admission of certain evidence

legal rules of evidence, and receives less or different testimony,"[15] and, if so, whether it does so "in order to convict the offender." We conclude that it does neither.

a. "*Alters the legal rules of evidence.*" The defendant argues that § 6A "alters the legal rules of evidence" regarding proof of a prior OUI conviction by allowing court records of conviction to be prima facie evidence of a conviction without corroborating evidence or live authenticating testimony. The defendant contends that, contrary to our holding in *Commonwealth* v. *Koney*, 421 Mass. 295, 302 (1995), § 6A allows proof of a prior conviction by "[m]ere identity of name." The Commonwealth counters that § 6A did not change, but merely clarified, existing law, and that it does not come within *Calder*'s fourth category because it does not alter the Commonwealth's burden of proof or the sufficiency of the evidence necessary to meet that burden. We conclude that however § 6A may have changed the law, it does not authorize proof of a prior conviction on evidence that was held insufficient in *Commonwealth* v. *Koney*, *supra*. Because, so construed, the statute does not reduce the Commonwealth's burden of proof or the sufficiency of evidence required to prove a prior conviction, it does not violate the ex post facto clause.

In *Commonwealth* v. *Koney*, *supra*, we held that, for purposes of proving a prior OUI conviction, "[m]ere identity of name is not sufficient to indicate an identity of person." We stated that the Commonwealth must produce evidence linking the person named in the conviction record to the defendant. *Id.* at 301-302. As the Commonwealth observes, conviction records will often include more identifying information than merely the offender's name, in which case this requirement will be met.[16] However, to the extent that § 6A might be read as allowing proof of a prior

against defendants, was not ex post facto law).

[15]The phrases "alters the legal rules of evidence" and "receives less or different testimony" in *Calder* have been treated as synonymous, not as referring to distinct types of ex post facto laws. See *Carmell* v. *Texas*, *supra* at 530.

[16]Indeed, the second question reported by the trial court assumes a conviction record with such identifying information. We provide further guidance in the event of cases in which the Commonwealth introduces a conviction record containing only a name.

conviction solely by a record bearing the same name as the defendant's, it should be obvious that a conviction record bearing the name "John Smith" can only be prima facie evidence that someone named John Smith was convicted previously. Our decision in *Commonwealth* v. *Koney, supra,* established what should be common sense — that the prior conviction record is not sufficient (indeed, is hardly even probative) unless linked to the defendant.

Our reasons for construing § 6A as consistent with the *Koney* decision are twofold. First, we "presume that the Legislature is aware of the prior state of the law as explicated by the decisions of this court," *Commonwealth* v. *Callahan,* 440 Mass. 436, 441 (2003), quoting *L.W.K.* v. *E.R.C.,* 432 Mass. 438, 455 (2000) (Cowin, J., dissenting), and do not readily assume that it intends to overrule our decisions sub silentio, see *Crown Shade & Screen Co.* v. *Karlburg,* 332 Mass. 229, 230-231 (1955).

Second, a contrary interpretation of § 6A invites constitutional difficulty. In a G. L. c. 278, § 11A, proceeding, prior convictions must be proved beyond a reasonable doubt. *Commonwealth* v. *Pagan,* 445 Mass. 161, 174 (2005). In *Commonwealth* v. *Koney, supra,* we held that records bearing only a name were insufficient as a matter of law to meet the Commonwealth's burden. If the Legislature abrogated the *Koney* decision, it would effectively authorize proof of a prior conviction by something less than proof beyond a reasonable doubt. Put differently, a legislative attempt to make "mere identity of name" prima facie evidence of a prior conviction exceeds the Legislature's constitutional authority to create prima facie inferences in criminal cases. Because we construe statutes to avoid constitutional problems where possible, see *Lambert* v. *Executive Director of the Judicial Nominating Council,* 425 Mass. 406, 410 (1997), we interpret § 6A, as we did its predecessor, not to authorize proof of a prior conviction by "mere identity of name."

Construed in this manner, § 6A is not a violation of *Calder*'s fourth category, because it falls on the permissible side of the line drawn in *Carmell* v. *Texas,* 529 U.S. 513, 545 (2000). Section 6A does not change the Commonwealth's burden under G. L. c. 278, § 11A, of proving prior OUI convictions beyond a

reasonable doubt. Nor does it have the *effect* of lowering this burden by reducing the sufficiency of the evidence the Commonwealth must introduce. In the *Carmell* decision, the Texas Legislature took evidence that was formerly *insufficient* to convict (the victim's uncorroborated testimony) and retroactively made it *sufficient. Carmell* v. *Texas, supra* at 544-546. By contrast, the "prima facie" element of § 6A does not render sufficient any evidence that would not have been sufficient beforehand.

This can best be seen by analogy to § 6A's predecessor, the former G. L. c. 90, § 24 (4). A court record of conviction, accompanied by probation records linking the defendant to the conviction, would have been sufficient to prove the prior conviction even before former § 24 (4) *assured* prosecutors and judges that it would. Indeed, we can think of nothing that would establish the prior conviction more definitively. Likewise, the types of official public records that § 6A makes prima facie evidence (conviction, probation, corrections, or registry records) each could have been independently sufficient to prove the prior conviction even before Melanie's Law. See *Commonwealth* v. *Bowden, post* 593, 601-602 (2006). We have long recognized the significant probative value of "a record of a primary fact made by a public officer in the performance of official duty." *Commonwealth* v. *Verde,* 444 Mass. 279, 283 (2005), quoting *Commonwealth* v. *Slavski,* 245 Mass. 405, 417 (1923).

The fact that the evidence designated as prima facie by § 6A was already sufficient to establish a prior conviction does not make the provision meaningless. As already stated, prima facie provisions serve a useful purpose that does not involve lowering the Commonwealth's substantive burden of proof: they represent the Legislature's considered judgment that certain evidence (usually administratively easier to produce) is so probative of an aspect of a crime that it is sufficient to meet the Commonwealth's burden of production on that issue. Subject to constitutional limits such as we imposed in *Commonwealth* v. *Koney, supra,* and that we reaffirm today, the Legislature is free to make such judgments and prosecutors and judges are entitled to rely on them.

b. "*In order to convict the offender.*" Even if § 6A did "alter

the legal rules of evidence" with regard to proof of a prior conviction, it would not be "in order to convict the offender" under *Calder*. Section 6A applies only to G. L. c. 278, § 11A, proceedings, from which no conviction results. Rather, the OUI offender is already convicted of the substantive offense, and the proceeding is only to determine the appropriate punishment. See *Commonwealth* v. *Miranda*, 441 Mass. 783, 787-788 (2004); *Commonwealth* v. *Corbett*, 422 Mass. 391, 393-394 (1996) (repeat offender provision of OUI statute relates solely to punishment); *Commonwealth* v. *Murphy*, 389 Mass. 316, 321 (1983) (same). Indeed, speaking of repeat offender statutes generally, we have stated:

> "[A] repeat offender statute 'concerns solely the sentence of a person convicted of a [current] violation . . . who has previously been convicted of [another enumerated violation]. The prior offense is not an element of the crime for which a defendant is charged but concerns the punishment to be imposed if he is convicted . . . and the prior offense is proved.' "

*Commonwealth* v. *Pagan*, 445 Mass. 161, 169 (2005), quoting *Bynum* v. *Commonwealth*, 429 Mass. 705, 708-709 (1999).[17] Because § 6A only applies once an OUI offender is already convicted and pertains solely to punishment, it is not used to "convict the offender" and thus does not implicate *Calder's* fourth category.[18]

5. *Due process and confrontation clauses.* The defendant argues also that St. 2005, c. 122, § 6A, violates the due process and confrontation clauses of the Federal and State Constitutions. The second reported question encompasses these arguments, es-

---

[17]*Apprendi* v. *New Jersey*, 530 U.S. 466, 490 (2000), is not implicated because the Court in that case held that every fact *other than a prior conviction* that increases the maximum penalty must be submitted to a jury and proved beyond a reasonable doubt. Here, even with respect to the fact of a prior conviction, G. L. c. 278, § 11A, entitles the defendant to a jury trial at which the Commonwealth must prove the prior conviction beyond a reasonable doubt.

[18]Other jurisdictions are in accord with our conclusion that *Calder's* fourth category is inapplicable to proceedings not resulting in a "conviction." See *John L.* v. *Superior Court*, 33 Cal. 4th 158, 179-180 (2004); *Mitchell* v. *State*, 884 P.2d 1186, 1203-1204 (Okla. Crim. Ct. App. 1994), cert. denied, 521 U.S. 1108 (1997).

sentially asking whether § 6A is a permissible exercise of legislative power. We construe likewise the portion of the second reported question that asks whether, notwithstanding § 6A, live testimony is required to prove that prior OUI convictions were in fact those of the defendant.

The thrust of the defendant's due process and confrontation clause claims is that § 6A impermissibly allows proof of a prior OUI conviction based on "[m]ere identity of name," *Commonwealth v. Koney, supra* at 302. As stated above, we construe the statute to be consistent with the *Koney* decision. Subject to the limitations of *Commonwealth v. Koney*, § 6A does not violate the confrontation clause by permitting certain public records to serve as prima facie evidence of a prior conviction, with or without live authenticating testimony. See *Commonwealth v. Verde*, 444 Mass. 279, 283-284 (2005) (no confrontation clause violation where narcotics analysis certificates are admitted as prima facie evidence of composition, quality, and weight of drugs, without analyst's testimony). Nor does § 6A violate principles of due process by permitting these specified records to serve as prima facie evidence of a conviction, because, subject to the limitations of *Commonwealth v. Koney, supra*, any of them is sufficient to prove the prior conviction beyond a reasonable doubt. See *Commonwealth v. Pauley*, 368 Mass. 286, 296-298, appeal dismissed, 423 U.S. 887 (1975) (at least where fact proved can establish prima facie inference beyond reasonable doubt, prima facie provision comports with due process).

6. *Conclusion.* We hold that the application of § 6A of Melanie's Law, St. 2005, c. 122, § 6A, as construed in this opinion, to the defendant's G. L. c. 278, § 11A, proceeding does not violate the ex post facto, due process, or confrontation clauses of the Federal or State Constitutions. We answer the first reported question "No" and the second reported question "Yes," documentary evidence can be sufficient to sustain a finding of a prior conviction. The matter is remanded to the District Court for further proceedings consistent with this opinion.

*So ordered.*