SUPERIOR COURT 
 
 COMMONWEALTH VS. GERALDO ROJAS

 
 Docket:
 1977CR0275
 
 
 Dates:
 July 7, 2020
 
 
 Present:
 David A. Deakin Associate Justice
 
 
 County:
 ESSEX, ss.
 

 
 Keywords:
 MEMORANDUM AND ORDER ON MOTION TO ADMIT DEFENDANT TO BAIL 
 
 

             The defendant, Gerald() Rojas, is charged with armed assault with intent to murder (G. L. c. 265, § 18(b)), assault by means of a dangerous weapon (G. L. c. 265, § 15B(b)), assault and battery by means of a dangerous weapon (G. L. c. 265, § 15A(b)), and carrying a firearm without a license (G. L. c. 269, § 10) in connection with an April 28, 2019, shooting in Lynn. He was indicted with two co-defendants, Deylis Encarnacion (see 1977CR00276) and Michael Cepeda (see 1977CR00277). Pursuant to G. L. c. 276, § 58A, Rojas has been held without bail since July 15, 2019, while awaiting trial in this court. He has brought a Motion to Admit Defendant to Bail (Paper No. 21). As grounds for his Motion, Rojas contends both that his detention has exceeded the 180-day limit on pretrial detention under G. L. c. 276, § 58A ("§ 58A"), and that, in any event, circumstances have changed — both as to his dangerousness and as to his plan for pretrial release — such that his continued detention is unnecessary and, therefore, impermissible. The court concludes that § 58A's 180-day limit on pretrial detention has not expired because of periods excluded by § 58A from its computation. The court further concludes that there have been no material changes in circumstances that warrant vacating the court's original order of pretrial detention. The Motion to Admit Defendant to Bail is therefore DENIED.
                                                            -2-
PROCEDURAL HISTORY[1]
            Rojas was arraigned in Lynn District Court on May 3, 2019, in connection with these charges. See 1913CR001216. On May 15, 2019, a judge of that court held him without bail pursuant to G. L. c. 276, § 58A. See 1913CR001216. The indictment in this case was returned on June 13, 2019, and Rojas was arraigned in this court on July 15, 2019. A hearing for pretrial detention was held that day, and, the following day, Rojas was again held without bail on grounds of dangerousness. See G. L. c. 276, § 58A.
            A pretrial conference was held on August 28, 2019, and the case was scheduled for a motion hearing on September 27, 2019. That day, Rojas filed a "Motion for [D]iscovery." The case was scheduled for another motion hearing on October 9, 2020. It appears from the docket that the court (Drechsler, J.) ruled on the discovery motion on October 9. The case was then continued for a lobby conference on December 2, 2019.
            The next scheduled date was January 21, 2020, for "[filling of [m]otions." That filing date was continued until February 27, 2020, at the "[r]equest of [the d]efendant." On February 21, 2020, current defense counsel, Eduardo Masferrer, entered his appearance, replacing Rojas's prior, appointed counsel. On February 27, 2020, the Commonwealth filed a Motion for Court Order for the Production of the Victim's Medical Records (Paper No. 13). The court (Tabit, J.) allowed the motion that day. The case was next scheduled for April 9, 2020, for a "[Nearing on [c]ompliance." On March 31, 2020, however, that hearing was continued "due to COVID-19"
---------------------------
[1] The court sets out the procedural history in some detail as it is necessary to evaluate the defendant's claim that he is entitled to release because his detention under G. L. c. 276, § 58A, has exceeded the 180-day statutory limit, even after subtracting time that is excludable under Mass. R. Grim. P. 36, and therefore excluded from the calculation of the statutory period. Unless otherwise indicated, citations are to the docket. 
                                                            -3-
until May 15, 2020.[2] On April 29, 2020, the hearing was continued to June 19, 2020, again due to the COVID-19 public health emergency.
            On June 19, 2020, Rojas filed this Motion to Admit Defendant to Bail, as well as several other motions. On June 25, 2020, the Commonwealth filed its Opposition (Paper No. 27). A hearing was held on the Motion on June 26, 2020, by teleconference. After the hearing, the Commonwealth filed a Supplemental Summary of Grand Jury Testimony (Paper No. 28), and Rojas filed a Reply to Commonwealth's Opposition to Release on Bail (Paper No. 29).
ANALYSIS
I. The 180-day limit on pretrial detention under G. L. c. 276, § 58A
            A. The statutory scheme
            Section 58A of G. L. c. 276, allows for the pretrial detention of indicted defendants for up to 180 days.[3] In order to hold a defendant without bail under the statute, a court must find both that the defendant poses a danger to one or more members of the public and that no conditions of release can reasonably protect against that danger. See Commonwealth v. Vieira, 483 Mass. 417, 417 (2019). The 180-day period during which a defendant may be detained pretrial on grounds of dangerousness excludes "any period of delay as defined in Massachusetts Rules of Criminal Procedure Rule 36(b)(2)."[4] G. L. c. 276, § 58A(3). Rule 36(b)(2) lists a number of situations in
---------------------------
[2] See Commonwealth v. Lougee, 2020 WL 3407706 (SJC-12949, 12950, 12955) at *1 (June 22, 2020), (statewide continuances of jury trials ordered on March 13, 2020, and continuing until September 8, 2020 (and possibly beyond) "excluded from the computation of statutory time limits on pretrial detention under G. L. c. 276, § 58A").
[3] The statute permits the detention of defendants awaiting trial in district court for up to 120 days. G. L. c. 276, § 58A(3).
[4] Mass. R. Grim. P. 36 creates a presumption of dismissal after a criminal case has been pending for one year "unless the Commonwealth justifies the delay." Commonwealth v. Dirico, 480 Mass. 491, 497 (2018), quoting Commonwealth v. Spaulding, 411 Mass. 503, 504 (1992). "Rule 36 is a `[case] management tool . .'" that "also 'creates a means through which [criminal] defendants who desire a speedy trial can secure one.'" Id. (parentheses in original), quoting Barry v. Commonwealth, 390 Mass. 285, 295-296 (1983).
                                                            -4-
which periods of delay in criminal prosecution are excluded from computation of time under the rule (see infra). The appellate courts of the Commonwealth have also interpreted Rule 36 as excluding from its computation periods of delay that a defendant "acquiesced in, was responsible for, or benefited from . . . ." Commonwealth v. Dirico, 480 Mass. 491, 498-499 (2018). Like the one-year period under Rule 36, the 180-day period of permissible detention under G. L. c. 276, § 58A(3), starts — or, in the case of a defendant previously arraigned in district court, restarts — with the defendant's arraignment in superior court. See Finn v. Commonwealth, 482 Mass. 817, 822 (2019). Cf. Commonwealth v. Polanco, 92 Mass. App. Ct. 764, 767 (2018) ("return date" for Rule 36 purposes is date of arraignment in superior court).
            This case turns in large part on whether only periods expressly excluded by Rule 36(b)(2) are also excluded under G. L. c. 276, § 58A, or, instead, periods excluded by judicial interpretation of Rule 36 are also excluded under the statute. Effectively adopting the latter position, the Commonwealth argues that periods of delay that Rojas "acquiesced in, was responsible for, or benefitted from," are excluded from the Rule 36 computation, Dirico, 480 Mass. at 499, and therefore also from the computation of the 180-day limit under § 58A. Rojas's argument proceeds, in part, from the implied premise that only those periods of delay excluded from the Rule 36 computation by the express language of Rule 36(b)(2) are also excluded from the § 58A computation.
            The issue is one of statutory construction. The court must determine the Legislature's intent in incorporating in § 58A an exclusion of periods of delay set out in Rule 36(b)(2), the only sub-section of the rule that enumerates excluded periods. The question is whether the
                                                            -5-
Legislature intended to exclude only those periods expressly set out in that sub-section or, instead, intended to incorporate the courts' common-law interpretation of the rule. For the reasons set out below, the court adopts the latter view and concludes that the Legislature intended for the excluded periods under Rule 36 and § 58A to be coextensive.
            In drafting laws, the Legislature is presumed to know and understand the common law. See Elm Corp. v. Commissioner of Revenue, 433 Mass. 568, 571 (2012) ("Statutes are to be construed in the light of the preexisting common and statutory law with reference to the mischief probably intended to be remedied. .. . It is not to be lightly supposed that radical changes in the law were intended where not plainly expressed.") (citations omitted). The Supreme Judicial Court has explained that, in the Rule 36 context,
[t]here are two separate ways in which the Commonwealth can meet its burden of justifying a delay, thereby excluding it from the speedy trial calculation under rule 36. The first way is to show that the delay falls within one of the 'excluded periods' specifically enumerated under rule 36(b)(2)..
The second way that the Commonwealth can justify a delay is provided not by any provision in rule 36, but by the common law. Under the common law, a defendant is not entitled to dismissal if he or she acquiesced in, was responsible for, or benefitted from the delay. . . . Thus, in several cases, we have excluded time under rule 36 based on the defendant's failure to object to a delay.
Dirico, 480 Mass. at 498-499 (citations omitted). In Commonwealth v. Look, 379 Mass. 893, 898 n.2 (1980), the Supreme Judicial Court noted that the doctrine of acquiescence[5] pre-dated the adoption of Rule 36, which went into effect on July 1, 1979. At least since 1983, "[t]he [Reporter's] Notes to subdivision (b) (2) [of Rule 36 have] state[d] that periods of delay in which a defendant acquiesces, for which [the defendant] . . . is responsible, or from which [the defendant] . . . benefits should be excluded periods and 'are not to be included in the calculation
---------------------------
[5] For brevity's sake, the court uses the phrase doctrine of acquiescence to refer to delay in which the defendant acquiesced, for which the defendant was responsible, or from which he benefited.
                                                            -6-
of the time limits of this rule'" Bony v. Commonwealth, 390 Mass. 285, 295 (1983), quoting Reporters' Notes to Rule 36(b)(2). It is, therefore, indisputable that, when § 58A was enacted in July 1994, courts had long construed Rule 36 as excluding not only periods expressly listed in sub-section 36(b)(2) but also periods of delay in which the defendant had acquiesced.
            That the common-law interpretation of Rule 36 excludes periods of delay to which a defendant acquiesces, however, does not resolve whether the Legislature intended to exclude those periods from the computation of time under § 58A. The court, therefore, must look to "the intent of the Legislature in enacting" the statute. Wallace W. v. Commonwealth, 482 Mass. 789, 793 (2019), quoting, inter alia, Matter of E.C., 479 Mass. 113, 118 (2018). As the Supreme Judicial Court recently explained,
[t]he primary purpose of G. L. c. 276, § 58A, is to "protect[] the public from the potential harm posed by persons who have been arrested or are subject to arrest, who have found to be dangerous." . . . Accordingly the statute "permits pretrial detention of persons accused of certain crimes on the grounds of dangerousness, in order to protect public safety."
Finn v. Commonwealth, 482 Mass. 817, 820 (2019) (citations omitted). In light of this important public safety purpose, it is most unlikely that the Legislature intended to allow a defendant found to be dangerous to "passively consent to continuances or delays and then complain that the clock has ticked for purposes of counting the [180 days] allowed to [detain the defendant while awaiting] trial." Commonwealth v. Amidon, 428 Mass. 1005, 1008 (1998) (citations omitted). The court therefore concludes that, when the Legislature incorporated in § 58A a reference to the exclusions from the Rule 36 computation set out in sub-section (b)(2), it intended to exclude the
                                                            -7-
same periods from the computation under § 58A. Thus, to the extent that a period of delay is excluded from the Rule 36 computation, it is also excluded from the computation under § 58A.[6]
            There are two potential arguments against this conclusion. The first centers on the rule of lenity. That rule compels courts to "interpret ambiguous statutory language in a criminal defendant's favor." Commonwealth v. Coppinger, 86 Mass. App. Ct. 234, 239 (2014), citing Commonwealth v. Maloney, 447 Mass. 577, 584-585 (2006). The rule, however, "is a guide for resolving ambiguity, rather than a rigid requirement that we interpret each statute in the manner most favorable to defendants." Id., quoting, inter alia, Maloney, 447 Mass. at 585. "In criminal cases no less than in civil, [w]here the draftsmanship of a statute is faulty or lacks precision, it is our duty to give the statute a reasonable construction.' Maloney, 447 Mass. at 585. Here, the Legislature could well have believed that, by invoking the exclusions listed in Rule 36(b)(2), it was incorporating the common law interpreting the statute's provision for exclusion of time. This situation thus presents not an issue of ambiguity — counseling application of the rule of lenity — but, instead, one of arguable imprecision, which requires the court to interpret the statute reasonably.
            The second argument against the court's decision involves an application of "the maxim of negative implication," which provides "that the [Legislature's] express inclusion of one thing [in a statute] implies the exclusion of another." Commonwealth v. Garvey, 477 Mass. 59, 65 (2017), quoting Halebian v. Berv, 457 Mass. 620, 628 (2010). Thus, the argument proceeds, the Legislature's express reference in § 58A to periods of delay excluded by Rule 36(b)(2) implies that no other periods of delay excluded under Rule 36 are excluded under § 58A. The Supreme
---------------------------
[6] At least one other judge of this court has reached the same conclusion. See Commonwealth v. Zapata, 1877CR00618, Memorandum of Decision and Order on Defendant's Motion for Release on Bail (Paper No. 21) (Karp, J. Aug. 21, 2019)
                                                            -8-
Judicial Court has cautioned, however, that "the maxim of negative implication . 'requires great caution in its application.'" Id. For the reasons set out, above, the court will not apply the maxim of negative implication in the face of the important public safety purpose addressed by § 58A.
            There is a final aspect of the § 58A computation in this case, one that (so far, at least) is unique to this year. It is the effect of the statewide COVID-19 courthouse closure. In Commonwealth v. Lougee, 2020 WL 3407706 (SJC-1 2949, 12950, 12955) at *1 (June 22, 2020), the Supreme Judicial Court held that statewide continuances of jury trials ordered on March 13, 2020, and continuing until September 8, 2020 (and possibly beyond) are "excluded from the computation of statutory time limits on pretrial detention under G. L. c. 276, § 58A." In Lougee, the SJC noted that, in each of several orders issued between March 13, 2020, and the date of the issuance of the opinion (June 22, 2020), it had found that "the trial continuances serve the ends of justice and outweigh the best interests of the public and the criminal defendant in a speedy trial . . . ." Id. The SJC further held that its statewide finding represented an unusual application of Mass. R. Crim. P. 36(b)(2)(F), which ordinarily requires a trial judge to make such a finding in an individual case. See id. at *4 ("Ordinarily, it is the trial judge who grants a continuance and who makes the findings required by rule 36(b)(2)(F) . .").
            B. Application of the statutory scheme
            There is no dispute that Rojas has been held for significantly more than 180 days. Between his arraignment on July 15, 2019, and the Supreme Judicial Court's statewide continuance on March 13, 2020, see supra, 253 days elapsed.[7] Once it is adjusted, however, for
---------------------------
[7] The court calculates the elapsed period from Rojas's arraignment date, July 15, 2019, and the Supreme Judicial Court's statewide continuance of jury trials on March 13, 2020, because there is no room for dispute that the SJC's statewide continuance and superseding orders tolled the running of the 180-day limit under G. L. c. 276, § 58A, until at least September 8, 2020. See Commonwealth v. Lougee, 2020 WL 3407706 (SJC-12949, 12950, 12955) at *1 (June 22, 2020). Since March 13, 2020, an additional 116 days have passed. Those days, however, are not included in the 58A computation.
                                                            -9-
periods excluded under the Rule 36 computation, Rojas's period of pretrial detention stands at forty-three days — well below the 180-day limit. He is not, therefore, entitled to be admitted to bail by operation of Section 58A. This is best illustrated by analyzing individual periods of delay separately.
                        1. Arraignment to pretrial conference: July 15 — August 28, 2019 (43 days)
            At least absent unusual circumstances not present here, the period from arraignment to pretrial conference is included in the Rule 36 computation and, therefore, in the computation of permissible detention under G. L. c. 276, § 58A. In the Rule 36 context, defense "counsel need not object where a procedure and timetable is established by the rules" in order to preserve the defendant's rights. Commonwealth v. Graham, 480 Mass. 516, 534 (2018), quoting Barry v. Commonwealth, 390 Mass. 285, 296 n.13 (1983). As a pretrial conference is prescribed by Mass. R. Crim. P. 12(a), Rojas's counsel was not required to object in order to insure that the period between the arraignment and the pretrial conference required by the rules was included in the Rule 36 computation. The forty-three days between Rojas's arraignment and the pretrial conference are included in the computation of time under Rule 36 and, therefore, also under G. L. c. 276, § 58A.
                        2. Pretrial conference to filing of motions: August 28 — September 27 (31 days)
            Review of the recording of the pretrial conference reveals that the parties selected a date of September 27 for "non-evidentiary motions." The date was selected by agreement of the parties and without objection. The court (Karp, J.) instructed the parties to file motions "a couple
                                                            -10-
of weeks before" the hearing date, but no motion was filed until September 27, 2020, when Rojas filed a Motion for Discovery (Paper No. 10). The Commonwealth did not file any motions at that time. It thus seems that the period between the pretrial conference and the filing of the discovery motion would be excluded from the Rule 36 computation — and therefore from the computation pursuant to § 58A — by Rule 36(b)(2)(v) (delay resulting from hearings on pretrial motions). In any event, there is no doubt that Rojas benefitted from the continuance, using it to prepare and file a discovery motion. The period is therefore excluded even if it is not comprehended by Rule 36(b)(2)(v). The elapsed period for purposes of both Rule 36 and G. L. c. 276, § 58A was thus forty-three days as of September 27.
3. Filing of discovery motion to hearing on discovery motion (September 27 October 9; 12 days)
            On September 27, 2019, when the defendant filed a discovery motion, the case appears to have been scheduled for October 9, 2019, for a hearing on the motion. The motion was acted upon at that time. As the delay was occasioned by the defendant's motion for discovery, Rojas's concession that this period is excludable under Mass. R. Crim. P. 36(b)(2) is well warranted. The total elapsed period thus remained at forty-three days.
                        4. Resolution of discovery motion to scheduled lobby conference (October 9 December 2; 54 days)
            On October 9, 2019, the case was scheduled for a lobby conference on December 2. A review of the recording of that hearing reflects that Rojas's prior counsel requested that a lobby conference be scheduled for December 6, as did one of his co-defendants, Deylis Encarnacion (see 1977CR00276).[8] Because of a scheduling conflict, the lobby conference was scheduled for
---------------------------
[8] The third co-defendant, Michael Cepeda (see 1977CR00277), through counsel, told the court that he did not wish to participate in a lobby conference. His case was continued to January 21, 2020, for a trial assignment hearing.
                                                            -11-
December 2. As this delay was caused by Rojas's request, it is excluded under both Rule 36 and § 58A. The total elapsed period thus remained at forty-three days.
                        5. Lobby conference to motion filing date (December 2, 2019 — January 21, 2020; 50 days)
            On December 2, 2019, Rojas, through counsel, participated in a lobby conference, as did his co-defendant, Encarnacion. At the conclusion of the hearing, Rojas's prior counsel requested time to discuss the court's (Drechsler, J.) contemplated sentence. When the court initiated a scheduling discussion, the parties brought to the court's attention that the third co-defendant's case was scheduled for a trial assignment hearing on January 21, 2020. Rojas's prior counsel asked that his case not be scheduled for a trial assignment hearing as he intended to file a motion to suppress Rojas's statements. At the request of Rojas's counsel, the case was scheduled for filing of that motion. As there is thus no question that Rojas caused this delay, it is excluded from the computation of time under § 58A. The total elapsed time therefore was still forty-three days.
                        6. Date for filing of motion to suppress to extended date for filing (January 21 February 27, 2020; 37 days)
            On January 21, 2020, prior counsel for Rojas appeared. In addition to representing his client, counsel also stood in for counsel for the other two co-defendants. Counsel for Rojas requested a further date for filing of motions, and the Commonwealth agreed.[9] The case was
---------------------------
[9] The defendant's Memorandum in Support of the Defendant's Motion to be Admitted to Bail (Def.'s Mem.) (Paper No. 21) indicates that the case was continued on January 21, 2020, "for [the] District Attorney to file motions." Def. Mem. at p. 2. The source of this representation is unclear, and, in reviewing the recording of the January 21, 2020, hearing, the court heard no reference to the Commonwealth's intention to file motions. It is clear from the recording, however, that it was counsel for Rojas who requested the continuance for filing of motions.
                                                            -12-
continued to February 26, 2020, for the filing of motions.[10] As the defendant requested the continuance, it is excluded from the § 58A computation, and the total elapsed time stood at forty-three days.
7. Further motion filing date to issuance of statewide COVID-I 9 postponement order (February 27 — March 13, 2020; 15 days)
            On February 21, 2020, current counsel for Rojas entered his appearance as private counsel for the defendant. Six days later, on February 27, 2020, there was a hearing on a date scheduled for the filing of defense motions. Apparently, neither Rojas nor his co-defendant, Encarnacion, had filed any motions. The Commonwealth, however, had filed a motion pursuant to Mass. R. Crim. P. 17 for production of the victim's medical records (Paper No. 13), which the court (Tabit, J.) allowed that day. The parties discussed the need for a date for compliance with the Commonwealth's Rule 17 motion, and counsel agreed on April 9, 2020, for that purpose. Appearing for Attorney Masferrer, Attorney Alyin Corpicglu appears to have agreed to the April 9 date. Neither the docket nor the recording of the hearing reflects that counsel for Rojas expressed any objection to the selection of the date. As Rojas selected a compliance date and offered no objection to the delay, he at least acquiesced in the delay, and the total elapsed time stood at forty-three days.
                        8. COVID-related delay (March 13 — June 19, 2020)
            The compliance hearing scheduled for April 9, 2020, did not occur. It was continued on March 31, 2020, as a result of the Supreme Judicial Court's March 13, 2020, order postponing
---------------------------
[10]For reasons that neither the docket nor the recordings of the two hearings reflect, the hearing actually was held the following day, February 27, 2020. At the outset of the hearing on that date, counsel for one of the co-defendants indicated that there had been "confusion" about the date set for the hearing and that at least some counsel thought that it had been scheduled for February 26, 2020. Neither the reason for the confusion nor the delay of one day in conducting the hearing is significant to the court's analysis.
                                                            -13-
jury trials and staying cases automatically. See Lougee, 2020 WL 3407706 (SJC-12949, 12950, 12955) at *1 (June 22, 2020) (delay resulting from statewide continuances ordered by the Supreme Judicial Court on March 13, 2020, and continuing until September 8, 2020 (and possibly beyond) "excluded from the computation of statutory time limits on pretrial detention under G. L. c. 276, § 58A."). The delay between the issuance of the Supreme Judicial Court's initial COV1D-19 order and Rojas's filing of this Motion is therefore excluded from the § 58A computation, which therefore still stands at forty-three days.
            Although the defendant has been held for almost one year in connection with these charges, his approach to the case — and then the onset of the COVID-19 global pandemic — have combined to exclude all but the first forty-three days of the case from the computation of his pretrial detention period under 0. L. c. 276, § 58A. He is not, therefore, entitled to bail by operation of that statute.
II. Changed Circumstances: The Evidence Presented to the Grand Jury
            Rojas further argues that changes in circumstances warrant his admission to bail. He maintains that a review of the grand jury minutes in his case — which were not available to him or his counsel at the time of his initial pretrial detention hearing — reflects that the Commonwealth's case that he fired his gun at the victims in this case is not strong. Rojas further contends that he has presented a release plan that adequately protects the public from any danger that he does pose. The court concludes that, regardless of whether the Commonwealth is able to prove beyond a reasonable doubt that Rojas fired a gun at the car, its case against him for participating in the shooting either as a shooter or as one who aided and abetted the shooter(s) is strong. There is therefore no changed circumstance as to his dangerousness that warrants reconsideration of the court's pretrial detention order. Moreover, although Rojas has proposed a
                                                            -14-
plausible, productive plan for his pretrial release, it does not address his access to firearms or the danger they would pose in his hands. it is therefore inadequate, in the court's judgment, to mitigate satisfactorily the danger that Rojas poses to the public. The defendant's Motion to be Admitted to Bail must therefore be denied.
            A. The Commonwealth's case
            Rojas maintains that conflicts in testimony among three eyewitnesses cast doubt on whether he fired shots into the car, one of which struck a female passenger in the hand. One witness, the victim's brother, who knew the defendant from having played basketball with him, testified in the grand jury that both Rojas and co-defendant Deylis Encarnacion had fired shots at the car. According to a police officer, the same witness took a telephone call from Rojas after his arrest. When the witness accused Rojas of having "shot [his] . .. sister," Rojas was overheard by at least one Spanish-speaking officer saying (in Spanish), "m----- f---er, watch what's going to happen tomorrow. We're going to settle the rest of them." Grand Jury Minutes, June 13, 2019, at p. 5, 11. 24-25. Later, Rojas admitted to police that he had been at the scene of a shooting, that he had been handed a gun by a stranger, and that he had fired the gun, but only into the air. Id. at p. 17, 11. 11-13. Rojas told police that it was Encarnacion who had fired into the car. Id.
            Although there is certainly evidence from which Rojas will be able to challenge the Commonwealth's contention that he fired into the car, the evidence is strong that Rojas: (1) was present at the scene of the shooting; (2) was armed with a gun; and (3) fired the gun at the same time that Encarnacion fired into the car. The Commonwealth's case against Rojas as a willing participant in the shooting is therefore substantial. More important, in the context of the current motion, the evidence provides clear and convincing evidence that the defendant is a danger to
                                                            -15-
one or more members of the community, and there is therefore no basis to disturb the court's initial finding on this point.
            B. The defendant's proposed release plan
            Although the defendant's proposed release plan — living with a family friend and working at Wal-Mart, enforced by electronic monitoring — is workable, as far as it goes, it does not substantially protect the public from the danger that Rojas has been found to pose. In this case, Rojas allegedly was at a party that rapidly turned violent. Regardless of whether he brought the gun to the party or, as he later told police, was handed the gun at the last minute, Rojas acknowledges that he tired a shot (into the air, by his account) at the same time that another young man fired into a car with passengers in it. A young woman was shot during the incident. In light of his apparent role in this violent — and extraordinarily dangerous — episode, the court is not satisfied that the proposed conditions of release would protect the public adequately from the danger Rojas poses.
CONCLUSION AND ORDER
            For the foregoing reasons, the defendant's Motion to be Admitted to Bail is DENIED.
/s/David A. Deakin Associate Justice
July 7, 2020