COMMONWEALTH *vs.* MARTIN BOWLER.

Middlesex. December 6, 1989. - May 9, 1990.

Present: LIACOS, C.J., ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Homicide. Malice. Intent. Mental Impairment. Intoxication. Practice, Criminal,* Instructions to jury, Retroactivity of judicial holding, Failure to make objection, New trial, Assistance of counsel.

At a murder trial, the judge's instruction to the jury that "voluntary intoxication does not reduce the crime of murder to manslaughter," or his failure to instruct that intoxication bears on the question of malice, did not create a substantial risk of a miscarriage of justice, where the evidence of intoxication was weak and the evidence of malice was strong. [308-310]

INDICTMENT found and returned in the Superior Court Department on January 30, 1986.

The case was tried before *Robert S. Prince,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Robert L. Sheketoff* for the defendant.

*Wendy Murphy,* Assistant District Attorney, for the Commonwealth.

O'CONNOR, J. On November 19, 1986, a jury found the defendant guilty of murder in the second degree. The defendant appealed from his conviction, and we transferred the case here on our own initiative. The defendant argues on appeal that the trial judge's instructions to the jury concerning the significance of the defendant's intoxication at the time of the crime were erroneous in light of our decision in March, 1987, in *Commonwealth* v. *Grey*, 399 Mass. 469 (1987). We believe that, if the defendant had raised the intoxication issue at trial, he reasonably could argue on appeal that he is entitled to the benefit of the *Grey* rule. However, the defendant did not raise the issue at trial and, as we discuss below, the failure to preserve the issue is not excused. Furthermore, no substantial risk of a miscarriage of justice has been shown. Therefore, we affirm the conviction.

The judge instructed the jury, without objection, as follows: "If you find the defendant was so drunk or so affected by drugs that he could not form the specific intent to kill, if he was so drunk or so affected by drugs that he could not deliberately premeditate then you could reduce your verdict from first degree to second degree murder under the principle of deliberate premeditation with malice aforethought. In addition, I instruct you that while voluntary intoxication can reduce the crime of murder in the first degree to murder in the second degree, voluntary intoxication does not reduce the crime of murder to manslaughter." We subsequently declared in *Grey*, *supra* at 470-471, that evidence of a defendant's mental impairment may be considered by the jury not just to distinguish degrees of murder but on the question of malice, which is necessary to murder in any degree, as well. In *Commonwealth* v. *Glass*, 401 Mass. 799, 809-810 (1988), we made clear that mental impairment includes impairment due to voluntary intoxication. Therefore, measured by the *Grey* standard, the jury instruction was incorrect.

We have held today in *Commonwealth* v. *Bray*, *ante* 296 (1990), that *Commonwealth* v. *Grey*, *supra*, announced a "new" criminal rule for the purpose of retroactivity analysis. We also held that, because *Grey* announced a new rule and

that rule did not fall within either of two limited exceptions previously articulated by the United States Supreme Court in *Teague* v. *Lane*, 489 U.S. 288, 311 (1989), the defendant would not receive the benefit of the *Grey* rule. *Bray, supra* at 303. Critical to our decision in *Bray* was that the case was before us for collateral review. *Bray, supra* at 298, 300.

In *Bray, supra* at 298, we pointed out that, in cases decided after our decision in *Commonwealth* v. *Breese*, 389 Mass. 540 (1983), the Supreme Court "has sharply distinguished between cases on direct review or in which the conviction has not become final and cases on collateral review," and, among other cases, we cited *Griffith* v. *Kentucky*, 479 U.S. 314 (1987). In *Griffith*, the Court stated that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." *Id.* at 328. The Supreme Court reasoned that "the integrity of judicial review" requires that a new rule be applied to all similar cases which have not reached final judgment, and that "selective application of new rules violates the principle of treating similarly situated defendants the same." *Id.* at 323.

After this court decided *Commonwealth* v. *Waters*, 399 Mass. 708 (1987), a direct appeal, the defendant petitioned for a rehearing on the ground that under *Griffith* v. *Kentucky, supra*, he should have been given the benefit of the new rule established in *Commonwealth* v. *Allen*, 395 Mass. 448, 456 (1985), which was decided while his direct appeal was pending. We denied the petition for rehearing, stating that our reading of *Griffith* led us to conclude that "*Griffith* does not require this court to give retroactive application to rules that are not based on the Federal Constitution." *Commonwealth* v. *Waters*, 400 Mass. 1006, 1007 (1987). We recognize that there may be room for fair debate about whether the reach of *Griffith* is indeed limited to new rules that are based on the Federal Constitution. Also, we are aware that, even if the *Griffith* rule is so limited, the *Grey* rule can rea-

sonably be viewed as based on the Federal Constitution because "[a]n absolute rule that bars consideration of relevant evidence bearing on a defendant's capacity to have a specific intent is . . . arbitrary." *Commonwealth* v. *Grey, supra* at 471, quoting *Commonwealth* v. *Henson,* 394 Mass. 584, 593 (1985). Because of the view we take of the defendant's failure to raise at trial the question of the relevancy of his alleged intoxication at the time of the crime, resolution of the aforementioned questions bearing on retroactivity is unnecessary. We assume, without deciding, that the rule announced in *Grey* is retroactive to this case.

Even in cases where the retroactive application of a new criminal rule is required, the Supreme Court has ruled that "States may 'insulate past convictions by enforcing the normal and valid rule that failure to object to a jury instruction is a waiver of any claim of error.' " *Commonwealth* v. *Repoza,* 400 Mass. 516, 520 (1987), cert. denied, 484 U.S. 935 (1987), quoting *Hankerson* v. *North Carolina,* 432 U.S. 233 (1987). However, we have ruled in a number of cases that a defendant does not waive a constitutional issue by failing to raise it before the theory on which his argument is premised has been sufficiently developed to put him on notice that the issue is a live issue. Counsel need not be "clairvoyant." See *Commonwealth* v. *Stokes,* 374 Mass. 583, 587-588 (1978). See also *Commonwealth* v. *Repoza, supra* at 520; *Commonwealth* v. *Rembiszewski,* 391 Mass. 123, 126 (1984); *DeJoinville* v. *Commonwealth,* 381 Mass. 246, 248, 251 (1980). Here, since the defendant did not object at trial to the jury instruction concerning the significance of his intoxication, the error in the instruction was waived unless the failure to object is excused under the principle of the cited cases.[1]

In *Commonwealth* v. *Bray, supra* at 301, we concluded that *Grey* had announced a "new" rule for purposes of retroactivity analysis because the rule was not "dictated" either by *Commonwealth* v. *Henson, supra,* or by any other prece-

---

[1]The defendant's appellate counsel did not represent him at trial.

dent in existence when the conviction in *Bray* became final. However, in *Bray, supra* at 302, we also recognized that "*Grey* was consistent with, and even a logical extension of, the rule announced in *Henson.*" In *Henson* we held that evidence of mental impairment is relevant to the question of specific intent in prosecutions for crimes requiring specific intent. *Henson, supra* at 592-594. The fact that, despite *Henson,* the rule in *Grey* is considered "new" for the purpose of retroactivity analysis does not compel the conclusion that *Henson,* which was decided one and one-half years before the trial of this case, did not put the defendant fairly on notice that the relevancy of mental impairment to malice in murder was a reasonably arguable proposition. On the contrary, we think that *Henson* did provide such notice. After *Henson,* clairvoyance of counsel was not required. We conclude that, although the rule announced in *Grey* may well be retroactive to this case, the issue in any event was waived.

There remain only two questions: (1) Did the jury instruction, if erroneous, create "a substantial risk of a miscarriage of justice," so that, under the rule of *Commonwealth* v. *Freeman,* 352 Mass. 556, 564 (1967), a new trial is required even though the issue was not raised at trial? (2) Did counsel's failure to raise the issue at trial constitute ineffective assistance of counsel in violation of the defendant's constitutional rights?

We briefly state the relevant evidence. On the evening of October 26, 1985, the defendant, accompanied by two other individuals, was driving a motor vehicle in Watertown. They stopped at a liquor store where they bought two six-packs of beer, a half-pint of whiskey, and a half-pint of schnapps. Everyone was drinking. They then drove to Billerica, and one of the passengers left the car. The defendant and the other passenger, Judith Williams, returned to Watertown and picked up Cynthia Washburn. At approximately 11:30 P.M., Williams got out of the vehicle and went to a pub where she met the victim, Richard Farnese. At approximately 1 A.M. on October 27, Williams and Farnese went to Williams's apartment in Watertown. Five minutes later two women friends of

Williams came into the apartment, and minutes later the defendant and Cynthia Washburn arrived.

Williams said something to the defendant to the effect that she was not having a party or that he was not wanted there. The defendant became aggravated. Williams attempted to introduce the defendant to the victim who was sitting on a sofa in the living room. The victim stood up to shake the defendant's hand but the defendant moved away without responding. The defendant went to the kitchen and then returned and began arguing with Williams. The victim remained seated on the sofa. Then the defendant approached the victim with a white-handled carving knife in his right hand and punched him several times in the head and top half of his body. The victim was slouched over and the defendant was leaning on him. The defendant threw the knife and fled from the apartment.

According to the evidence, the victim was unconscious and bleeding from his head and chest as he slouched on the sofa. Williams moved the victim onto the floor. Minutes later, the defendant returned to the apartment, walked to where the victim was lying, said "he's alright," and then kicked the victim in the face once or twice. The defendant then fled the apartment a second time. The victim died nine days later as a result of stab wounds to the chest.

Washburn testified that she had seen the defendant drink "some of the Dewars [scotch] that [she] had purchased," and that he had had "a couple beers," as well as "some" cocaine. Williams testified that everyone in the automobile had been drinking. Williams also testified that, at her apartment, the defendant walked "in a fast motion," and that he "was walking alright — but fast." Asked for her opinion as to the defendant's sobriety, Williams testified, "I wouldn't say he was sober. But, I wouldn't say he was out of it, either." She said he "had a glow on — good glow on." Susan Aldin testified that she was the defendant's girl friend and that the defendant had come to her house at about 2 A.M. on October 27 and told her that he had been in a fight and

wanted to pick up some things. According to Aldin's testimony, the defendant was coherent at the time.

The evidence was very sparse both with respect to the amount of alcohol and cocaine the defendant consumed and with respect to its effect on him. Because the evidence of intoxication was weak, and the evidence of malice was strong, we conclude that there was little, let alone substantial, risk that the judge's jury instruction that "voluntary intoxication does not reduce the crime of murder to manslaughter," or his failure to instruct that intoxication bears on the question of malice, affected the verdict. There is no substantial risk that, had the judge instructed the jury in accordance with the *Grey* rule, the jury would have entertained a reasonable doubt about the defendant's capacity to form the specific intent to kill or grievously injure Farnese.

In a single sentence in his brief, the defendant states: "The error in the charge here must be addressed because counsel's failure to save the defendant's rights denied the defendant his state and federal constitutional rights to the effective assistance of counsel." The defendant's assertion is not supported by reasoned theory or citation of authority. This is insufficient argument, Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975). In any event, it cannot fairly be said that trial counsel's performance fell "measurably below that which might be expected from an ordinary fallible lawyer — and . . . [that] it has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974).

*Judgment affirmed.*