COMMONWEALTH vs. ANTHONY D'AGOSTINO.

Essex. September 11, 1995. - November 9, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Motor Vehicle*, Operating under the influence. *Practice, Criminal*, Retro-
activity of judicial holding, Instructions to jury, Failure to make objec-
tion. *Evidence*, Blood alcohol test, Admissions and confessions. *Consti-
tutional Law*, Self-incrimination, Admissions and confessions.

A criminal defendant convicted in March, 1992, of operating a motor vehi-
cle while under the influence of intoxicating liquor in violation of G. L.
c. 90, § 24, before this court submitted *Opinion of the Justices*, 412
Mass. 1201 (1992), to the Legislature, was excused from having failed
to object at his trial to the judge's instructing the jury as required by
G. L. c. 90, § 24 (1) (*e*), and the defendant was entitled to claim on
appeal the retroactive benefit of the holding of *Commonwealth* v.
*Zevitas*, 418 Mass. 677 (1994). [283-287]
At the trial of a complaint for operating a motor vehicle while under the
influence of alcohol, the judge violated the defendant's privilege against
self-incrimination under art. 12 of the Massachusetts Declaration of
Rights by instructing the jury pursuant to G. L. c. 90, § 24 (1) (*e*),
warning against drawing any inferences for or against any party from
the absence of any blood alcohol level test; in the circumstances, the
error was not harmless beyond a reasonable doubt and the defendant
was entitled to a new trial. [287-288]

COMPLAINT received and sworn to in the Lynn Division of
the District Court Department on June 28, 1991.

On transfer to the jury session of the Peabody Division, a
pretrial motion to suppress evidence was heard by *Domenic
J.F. Russo*, J., and the case was tried before him.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Risa E. Freeman* for the defendant.

*Margaret J. Perry*, Assistant District Attorney, for the
Commonwealth.

GREANEY, J. In *Commonwealth* v. *D'Agostino,* 38 Mass.
App. Ct. 206 (1995), the Appeals Court reversed the defend-
ant's conviction of operating a motor vehicle while under the
influence of intoxicating liquor, in violation of G. L. c. 90,
§ 24 (1) (*a*) (1) (1994 ed). The Appeals Court determined
that the rule announced in *Commonwealth* v. *Zevitas,* 418
Mass. 677 (1994), in which it was concluded that a jury in-
struction mandated by G. L. c. 90, § 24 (1) (*e*) (1994 ed.),
had the effect of unconstitutionally compelling an accused to
furnish evidence against himself or herself, *id.* at 683, should
be applied retroactively to the defendant's case. We granted
the Commonwealth's application for further appellate review.
We also conclude that the defendant is entitled to the benefit
of the rule announced in the *Zevitas* case, and that his con-
viction must be reversed.[1] In the decisions which follow,
*Commonwealth* v. *Adams, post* 289 (1995), and *Common-
wealth* v. *Koney, post* 295 (1995), we deal with other issues
pertaining to the retroactivity of the *Zevitas* decision.

The background of this case is set forth at 38 Mass. App.
Ct. at 207-208 (with one footnote omitted), as follows: "The
two arresting officers testified that they had observed the de-
fendant at the scene. Through them evidence was presented
that the defendant was unsteady on his feet, his eyes were
'glossy' [*sic*] and 'watery,' his breath had a strong odor of
alcohol, and his speech was slurred. The officers described
the defendant as verbally abusive and belligerent. Each of
the police officers testified that he formed an opinion, at the
time of arrest, that the defendant was under the influence of
alcohol. An emergency medical technician who observed the
defendant at the police station in response to his request for
medical treatment likewise testified that he formed the opin-
ion that the defendant was intoxicated at the time of his
arrest.

---

[1]Before the Appeals Court, the defendant also argued that certain state-
ments he made to police officers at the scene of the offense should be sup-
pressed. The Appeals Court rejected this claim. 38 Mass. App. Ct. 206,
208 (1995). We agree with the Appeals Court's resolution of this issue and
need not discuss it separately.   .

"The police officers were also permitted to testify to state-
ments made by the defendant during the roadside stop.
When asked by an officer where he was coming from, the
defendant replied, 'I had a couple drinks.' One of the officers
requested that the defendant perform a field sobriety test
which he refused stating that he 'didn't want to take any
test.' " At the conclusion of the evidence, the judge in-
structed the jury as required by G. L. c. 90, § 24 (1) (*e*).[2]
There was no objection to the instruction.

We turn now to the merits. In *Opinion of the Justices*, 412
Mass. 1201 (1992), we advised the Legislature that proposed
legislation mandating the admission of evidence of an ac-
cused's refusal to submit to a breathalyzer test of his or her
blood alcohol level would violate the privilege against self-
incrimination contained in art. 12 of the Declaration of
Rights of the Massachusetts Constitution. *Id.* at 1211. In
*Commonwealth v. Zevitas, supra,* we concluded that the in-
struction mandated by G. L. c. 90, § 24 (1) (*e*), had the
effect of telling the jury, "by strong implication at least, that
the defendant's blood alcohol level had not been tested, and
that the reason no test was conducted was that the defendant
refused to submit to such a procedure," *id.* at 683, presum-
ably because the defendant believed himself to be intoxi-
cated. Thus, this instruction was found to "unconstitutionally

---

[2]General Laws c. 90, § 24 (1) (*e*), reads, in pertinent part, as follows:

"When there is no evidence presented at a civil or criminal pro-
ceeding of the percentage, by weight, of alcohol in the defendant's
blood, the presiding judge at a trial before a jury shall include in his
instructions to the jury a statement of an arresting officer's responsi-
bilities upon arrest of a person suspected to be operating a motor
vehicle under the influence of alcohol and a statement that a blood
alcohol test may only be administered with a person's consent; that a
person has a legal right to take or not take such a test; that there
may be a number of reasons why a person would or would not take
such a test; that there may be a number of reasons why such test
was not administered; that there shall be no speculation as to the
reason for the absence of the test and no inference can be drawn
from the fact that there was no evidence of a blood alcohol test; and
that a finding of guilty or not guilty must be based solely on the
evidence that was presented in the case."

compel[] an accused to furnish [testimonial] evidence against himself or herself." *Id.* Measured by the *Zevitas* standard, the instruction given at the defendant's trial was error. We consider whether, in the absence of an objection, the defendant nonetheless is entitled to claim the retroactive benefit of the *Zevitas* decision, and, if so, by what standard the effect of the error at his trial should be assessed.

"Retroactive application of a rule of criminal law is indicated if (1) a case is on direct appeal or as to which time for direct appeal has not expired when the new rule is announced, and (2) the issue was preserved at trial." *Commonwealth* v. *Figueroa*, 413 Mass. 193, 202 (1992), quoting *Commonwealth* v. *Libran*, 405 Mass. 634, 645 (1989). See *Commonwealth* v. *Bellamy*, 391 Mass. 511, 515 (1984).[3] "However, we have ruled in a number of cases that a defendant does not waive a constitutional issue by failing to raise it before the theory on which his argument is premised has been sufficiently developed to put him on notice that the issue is a live issue. Counsel need not be 'clairvoyant.' " *Commonwealth* v. *Bowler*, 407 Mass. 304, 307 (1990).

The defendant's trial was held in March, 1992. *Opinion of the Justices, supra,* was submitted to the Legislature on May 12, 1992. That opinion carefully examined decisional law on the question of refusal evidence. It was observed that the

---

[3]We are concerned in this case with the possible retroactive application of a new criminal rule based on art. 12, rather than on a provision of the United States Constitution. The statement in *Commonwealth* v. *Figueroa*, 413 Mass. 193, 202 (1992), concerning when retroactive application of a new criminal rule is required, follows the Federal rule set out in *Griffith* v. *Kentucky*, 479 U.S. 314 (1987), and related cases. We have previously expressed some doubt as to whether the *Griffith* decision sets the standard for retroactive application of a new criminal rule based on a State constitutional provision. See *Commonwealth* v. *Bowler*, 407 Mass. 304, 306 (1990); *Commonwealth* v. *Waters*, 400 Mass. 1006, 1007 (1987). See also *Harper* v. *Virginia Dep't of Taxation*, 509 U.S. 86, 99-102 (1993), citing *Great N. Ry.* v. *Sunburst Oil & Ref. Co.*, 287 U.S. 358, 364-366 (1932) (recognizing that States enjoy some freedom in determining retroactive application of rules based on State law). The parties have not suggested that we should adopt a rule for retroactivity differing from the Federal rule. Thus, we need not, and do not, consider that question.

United States Supreme Court had held that the admission of evidence of a defendant's refusal to take a breathalyzer test does not offend against the Fifth Amendment to the United States Constitution. See *South Dakota* v. *Neville*, 459 U.S. 553, 564 (1983). A number of courts in other jurisdictions had considered the issue under provisions in their State Constitutions which are analogous to the Fifth Amendment. In a majority of those decisions, it also had been concluded that admission of refusal evidence did not violate the privilege against self-incrimination. See *Opinion of the Justices*, *supra* at 1202-1203. In New Hampshire, a State which has a constitutional guarantee against self-incrimination identical to that found in art. 12, the Supreme Court of New Hampshire held that the State constitutional privilege against self-incrimination did not prevent the introduction of evidence of an accused's refusal to take a breathalyzer test (*id.* at 1206-1207 n.5). See *State* v. *Cormier*, 127 N.H. 253, 260 (1985). Most of these decisions rested on the rationale "that, since a person's breath constitutes real or physical evidence rather than testimonial or communicative evidence," *Opinion of the Justices*, *supra* at 1204, there was no constitutional right to refuse to take a breathalyzer test, and, thus, no bar to the introduction of refusal evidence. The distinction between real or physical evidence and communicative evidence had also been recognized as applicable to the self-incrimination provision of art. 12. See *Commonwealth* v. *Brennan*, 386 Mass. 772, 783 (1982) (result of breathalyzer test noncommunicative evidence that does not evoke protections of art. 12). The precise question posed in the *Zevitas* case, whether a mandatory jury instruction bringing to the attention of the jury a defendant's refusal to have his or her blood alcohol tested, even if couched in arguably neutral terms, would violate the privilege against self-incrimination contained in art. 12, had not been addressed by this court or the Appeals Court.

In view of the state of the law at the time of his trial, the defendant should be excused for having failed to foresee that there might be a sound legal basis for an objection to the

jury instruction mandated by G. L. c. 90, § 24 (1) (*e*). Not until *Opinion of the Justices, supra,* was there anything in the nature of discussion by an appellate court in the Commonwealth which would have put the defendant fairly on notice that an instruction calling the jury's attention to a defendant's probable refusal to submit to a breathalyzer test might be held to violate art. 12's right against self-incrimination. These are appropriate circumstances for application of the so-called clairvoyance exception, and the Appeals Court properly invoked that exception to excuse the lack of an objection by the defendant's trial counsel. Contrast *Commonwealth* v. *Bowler,* 407 Mass. 304, 307-308 (1990) (declining to apply clairvoyance exception where rule sought to be applied retroactively was "logical extension" of rule announced in case decided prior to defendant's trial).

We are not persuaded by the Commonwealth's contention that the defendant's failure expressly to invoke art. 12 in his principal appellate brief amounts to a waiver of his right to rely on that provision. That brief was filed in the Appeals Court after *Opinion of the Justices, supra,* had been submitted to the Legislature. The brief cites *Opinion of the Justices,* and relies principally on its reasoning to argue, at some length, that the mandated instruction amounted to a violation of the defendant's constitutional right against self-incrimination. While the defendant's argument was not clearly focused on art. 12, the Commonwealth could not have failed to apprehend the substance of the contention being advanced by the defendant. Essentially the same argument was accepted by this court in the *Zevitas* decision, which was released after the defendant's principal brief had been filed. The defendant could not have raised the applicability of the *Zevitas* decision in any brief other than his reply brief, and in discussing the *Zevitas* decision in that brief, the defendant was supplementing the argument made in his principal brief.[4] We conclude, therefore, that the defendant is entitled

---

[4]The cases relied on by the Commonwealth to challenge the defendant's presentation of the art. 12 issue address the situation in which an entirely

to the benefit of the rule announced in *Opinion of the Justices, supra,* and applied in the *Zevitas* case.

The remaining question is whether the error was harmless beyond a reasonable doubt. See *Commonwealth* v. *McGrail,* 419 Mass. 774, 780 (1995); *Commonwealth* v. *Perrot,* 407 Mass. 539, 548-549 (1990). The jury heard sufficient evidence to warrant a conclusion that the defendant had operated a motor vehicle while intoxicated. The defendant, however, furnished evidence that he was ill due to allergies and a new medication he had begun taking that day, and that this was the explanation for his erratic driving and the other behavior he exhibited on the night he was arrested. The case raised an issue of credibility which was within the jury's province to resolve. It cannot be said with confidence that an instruction calling to the jury's attention the absence of a breathalyzer test, thus giving rise to a possible inference that the defendant knew himself to be intoxicated, could not have contributed to the jury's rejection of the defendant's evidence. See *Commonwealth* v. *McGrail, supra* (erroneous admission of refusal evidence despite ample evidence of intoxication not harmless). We note, as did the Appeals Court, 38 Mass. App. Ct. at 210, quoting *Commonwealth* v. *Zevitas, supra* at 684, that, "[w]here the prejudicial remarks fall from the judge himself, the effect on the jury is likely to be more damaging [than the erroneous admission of testimony]. . . ." *Commonwealth* v. *Goulet,* 374 Mass. 404, 414 (1978). The error was not harmless beyond a reasonable

novel or separate issue or argument was alluded to only in a reply brief. See *Kelley* v. *Rossi,* 395 Mass. 659, 665 n.6 (1985) ("argument" not raised in initial brief); *Travenol Lab., Inc.* v. *Zotal, Ltd.,* 394 Mass. 95, 97 (1985) (refusing to address request for a stay which had not been raised in the trial court or raised as an issue in initial brief); *Commissioner of Revenue* v. *Plymouth Home Nat'l Bank,* 394 Mass. 66, 67-68 n.3 (1985) (noting obligation to raise "argument" in initial brief). The defendant was not raising a new or separate issue in his reply brief.

doubt. For this reason, the judgment of conviction must be reversed and the verdict set aside.

*So ordered.*