## Commonwealth *vs.* Jorge Vasquez.

No. 08-P-253.

Hampden. June 11, 2009. - October 16, 2009.

Present: Berry, Dreben, & Hanlon, JJ.

*Controlled Substances. Joint Enterprise. Identification. Due Process of Law,*
Identification. *Constitutional Law,* Confrontation of witnesses, Harmless
error. *Practice, Criminal,* Confrontation of witnesses, Harmless error.
*Evidence,* Joint enterprise, Constructive possession, Identification,
Certificate of drug analysis. *Error, Harmless. Words,* "Clairvoyance
exception."

At the trial of indictments charging the defendant with distribution of cocaine
and possession of cocaine, the evidence was sufficient to prove that the
defendant acted as the intermediary to a third party in selling cocaine to an
undercover police officer, and that the defendant constructively possessed
cocaine that police found in his apartment. [448-450]

At a criminal trial, an undercover police officer's out-of-court identification of
the defendant via one photograph was not unnecessarily suggestive, and
the defendant's counsel was not ineffective for failing to suppress the
identification. [450-451]

In the circumstances of a criminal trial conducted after the United States
Supreme Court's decision in *Crawford* v. *Washington,* 541 U.S. 36 (2004),
where defense counsel failed to object to the erroneous introduction of
certificates of analysis to prove, without the testimony of the analyst who
conducted the analysis, that the substances at issue were, in fact, cocaine,
this court concluded that the standard governing appellate review was
whether the error gave rise to a substantial risk of a miscarriage of justice.
[451-460] Dreben, J., dissenting.

At the trial of indictments charging the defendant with distribution of cocaine
and possession of cocaine, no substantial risk of a miscarriage of justice
arose from the erroneous admission in evidence of certificates of analysis
to prove, without the testimony of the analyst who conducted the analysis,
that the substances at issue were, in fact, cocaine, where, with respect to
the distribution charge, an undercover police officer's testimony supported
the inference that the substances from the drug transactions were cocaine,
and where, with respect to the possession charge, the circumstantial evidence
at the time of the defendant's arrest was sufficient to prove that the substance
possessed was cocaine. [460-461] Dreben, J., dissenting.

The Justices of the Appeals Court reported to the Supreme Judicial Court
questions regarding the standard of appellate review to be applied when a
criminal defendant's counsel, in a trial conducted after the United States

Supreme Court's decision in *Crawford* v. *Washington*, 541 U.S. 36 (2004), fails to object to the erroneous introduction of certificates of analysis to prove, without the testimony of the analyst who conducted the analysis, that the substances at issue were, in fact, cocaine. [461-462]

INDICTMENTS found and returned in the Superior Court Department on November 17, 2005.

The cases were heard by *Tina S. Page*, J.

*Jon R. Maddox* for the defendant.

*Katherine E. McMahon*, Assistant District Attorney, for the Commonwealth.

BERRY, J. On January 11, 2007, after a bench trial, the defendant was found guilty of two counts of distribution of cocaine, G. L. c. 94C, § 32A(*c*); and one count of possession of cocaine, G. L. c. 94C, § 32A(*c*). After the verdicts, the defendant pleaded guilty to the subsequent offender portion of one of the distribution indictments, G. L. c. 94C, § 32A(*d*), and to the subsequent offender portion of the possession charge. On appeal, the defendant contends that (1) the evidence that the Commonwealth presented to prove that the defendant distributed cocaine as a joint venturer was insufficient, as was the evidence presented to prove that the defendant constructively possessed cocaine found during a search of his apartment; (2) an identification based on a one-photograph array, presented to the undercover police officer, was unduly suggestive and therefore improperly admitted; and (3) the introduction in evidence of drug certificates violated his right under the Sixth Amendment to the United States Constitution to confront the witnesses.[1] We affirm.

*Background.* This case involves an ongoing undercover police investigation that culminated in two separate cocaine purchases by an undercover officer. The second led to the police obtaining a search warrant for the defendant's apartment, in which a small amount of cocaine was found.

On July 7, 2005, State Trooper Henot Rivera went to 284

---

[1]The issue addressed in this opinion concerning the admission of the drug certificates and associated issues involving *Crawford* v. *Washington*, 541 U.S. 36 (2004), *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527 (2009), and *Commonwealth* v. *Verde*, 444 Mass. 279 (2008), is being reported to the Supreme Judicial Court. G. L. c. 211A, § 12.

Dwight Street Extension, apartment 4 left (4L), in Springfield, in an undercover capacity, to attempt to purchase drugs from a person he knew as "Flaco." Upon arrival, Rivera found Flaco and purchased an "eight-ball" of "crack" cocaine from him. The next day, State Trooper Daniel Soto showed Rivera a Registry of Motor Vehicles photograph of the defendant, which Rivera identified as a picture of Flaco.

On October 18, 2005, Rivera returned to 4L and told the defendant that he wanted to purchase an eight-ball of crack cocaine. The defendant explained that he only had "16's" so he went downstairs and returned with "Munchy," later identified as Juan Rebollo. Flaco then told Rebollo to "sell to him,"[2] and Rebollo responded by selling an eight-ball of crack cocaine to Rivera.

On October 20, 2005, the police executed a search warrant for 4L, which was the residence of the defendant as well as the location of the undercover purchases. The police found the defendant in the apartment, placed him under arrest, and, upon a search of the residence, found a small amount of cocaine.

1. *Sufficiency of the evidence.* After the close of the Commonwealth's case and again at the close of the evidence, the defendant moved unsuccessfully for required findings of not guilty on all counts. On appeal, the defendant contends that the evidence presented by the Commonwealth was insufficient to prove either that he distributed cocaine as a joint venturer when he told "Munchy" to "sell to him," or that he constructively possessed the cocaine that was found during the search of his apartment. We review the sufficiency of the evidence under the familiar standard set forth in *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), that is, "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Ibid.*, quoting from *Jackson* v. *Virginia*, 443 U.S. 307, 318-319 (1979).

To prove guilt under a theory of joint venture at the time of trial,[3] the Commonwealth was required to show that the defend-

---

[2] On direct examination, Rivera testified that the defendant told "Munchy" to "go ahead and sell him the crack." Thereafter, on cross-examination, Rivera testified that the defendant said only "[s]ell to him."

[3] The Supreme Judicial Court recently modified the elements of joint venture

ant was "(1) present at the scene of the crime, (2) with knowledge that another intends to commit the crime or with intent to commit a crime, and (3) by agreement is willing and available to help the other if necessary." *Commonwealth* v. *Ortiz*, 424 Mass. 853, 856 (1997), quoting from *Commonwealth* v. *Longo*, 402 Mass. 482, 486 (1988). The defendant does not contest that he was present at the scene of a drug transaction or that he knew that "Munchy" intended to sell drugs to Rivera. Instead, the defendant contends that he was not willing to be involved in the sale. He claims that by saying "sell to him," he was simply noting that Munchy could proceed with the sale if he so wished. Not only does this interpretation of the evidence strain credulity but, even if accepted, evidence showing that the defendant acted as an intermediary to a drug transaction is sufficient to prove guilt on a distribution charge. *Commonwealth* v. *Noons*, 2 Mass. App. Ct. 814, 814-815 (1974).

The defendant also contends that there was insufficient evidence to find him guilty of constructive possession. Constructive possession requires that the Commonwealth prove that the defendant had "knowledge [of the drugs] coupled with the ability and intention to exercise dominion and control." *Commonwealth* v. *Rosa*, 17 Mass. App. Ct. 495, 498 (1984). "While presence in an area where contraband is found 'alone cannot show the requisite knowledge, power, or intention to exercise control over the [contraband], . . . presence, supplemented by other incriminating evidence, "will serve to tip the scale in favor of sufficiency." ' " *Commonwealth* v. *Albano*, 373 Mass. 132, 134 [1977], quoting from *United States* v. *Birmley*, 529 F.2d 103, 108 [6th Cir. 1976]." *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 409-410 (1989).

When the police executed the search warrant, the defendant was present in 4L, along with four other men. The police entered through the front door, which had been fortified by a two-by-four. One man jumped through a window and was captured later by police. The defendant was in the living room with another man. The other two men were, respectively, in the bathroom and in the shower stall of that bathroom. Springfield police Officer

in the case of *Commonwealth* v. *Zanetti*, 454 Mass. 449 (2009). The modified definition has no application here.

Reginald Miller testified that, upon a search of the defendant, he found $493 in cash. In a kitchen cabinet, police found a plastic bag containing cocaine, along with a package of sandwich bags, a pair of scissors, and a scale. When the officers found the men in the bathroom, the one closest to the toilet attempted to elude capture. He was restrained, and $274 was recovered from inside the running toilet. In viewing the evidence in the light most favorable to the Commonwealth, money was found on the defendant, and drugs and money were found in common areas in the house. With five men in the house, all of whom could have possessed the drugs, the defendant's presence and the previously listed factors are sufficient to tip the scales so that any rational trier of fact could find the requisite elements of constructive possession beyond a reasonable doubt. See *Commonwealth* v. *Latimore, supra.*

2. *One-on-one photographic identification.* The defendant contends that the process by which Rivera identified the defendant via one photograph was unnecessarily suggestive, and therefore the photograph was improperly admitted. Although no attempt was made to suppress the identification at trial, the defendant contends that failure to raise the issue constitutes ineffective assistance of counsel. Since "the alleged ineffectiveness amounts to nothing more than a failure to preserve claims for appeal, we need only ask whether those claimed errors produced a substantial risk of a miscarriage of justice." *Commonwealth* v. *Randolph,* 438 Mass. 290, 297 (2002).

"It is well-settled that a one-on-one identification procedure of the type involved in this case, while generally disfavored, is not impermissibly suggestive so long as the police have good reason to use the procedure and they avoid any 'special elements of unfairness, indicating a desire on the part of the police to "stack the deck" ' against the defendant." *Commonwealth* v *Sylvia,* 57 Mass. App. Ct. 66, 69 (2003), quoting from *Commonwealth* v. *Leaster,* 395 Mass. 96, 103 (1985). There is no need for exigent circumstances in order to justify this procedure; "good reason" is sufficient. *Ibid.* In this case, the identification was made one day after the July 7, 2005, drug transaction in an ongoing investigation. The defendant argues that the possibility existed to use a larger array and that possibility is sufficient to render the identification unduly suggestive. "Failure of the police

to pursue alternate identification procedures does not in itself render an identification unduly suggestive. The question is whether the police acted permissibly. The answer is not governed by the availability of another approach." *Commonwealth* v. *Martin*, 447 Mass. 274, 280 (2006). Here, while the procedure may not have been favored, it was permissible, and there is no further evidence supporting the conclusion that the identification was prejudiced.[4]

3. *Issues involving the drug certificates.* With respect to the two drug sales and the possession charge that are at issue here, four certificates of analysis were introduced during the Commonwealth's case. The certificates are, in effect, out-of-court affidavits, introduced at trial to prove that the substances in question are, in fact, cocaine. No analyst was called to testify at trial. At the introduction of each certificate, defense counsel had the opportunity to object, but did not do so. Although the issue was thus waived, the defendant contends that his claim should be treated as if there had been an objection and thereby preserved for appellate review under the harmless beyond a reasonable doubt standard, rather than under the substantial risk of a miscarriage of justice standard, which generally applies to nonpreserved error.

During the pendency of this appeal, the United States Supreme Court decided *Melendez-Diaz* v. *Commonwealth*, 129 S. Ct. 2527, 2532 (2009), holding that, under the Federal Constitution, "[a]bsent a showing that the analysts were unavailable to testify at trial *and* that the petitioner had a prior opportunity to cross-examine them, petitioner was entitled to 'be confronted with' the analysts at trial." *Ibid.* Thus, the admission at a criminal trial of drug certificates of analysis, without testimony by the analyst who performed the drug test, is in violation of the confrontation clause of the Sixth Amendment to the United States Constitution.

The United States Supreme Court noted that, as a matter of Federal constitutional law, the holding in *Melendez-Diaz*

---

[4]In any event, the Commonwealth showed that Rivera's in-court identification of the defendant had a source independent of the photographic identification, namely, that he had spent enough time with the defendant while consummating drug transactions to be able to identify the defendant even if the admission of the out-of-court identification had been improper. See *Commonwealth* v *Sylvia*, 57 Mass. App. Ct. 66, 68-69 (2003).

"involves little more than the application of our holding in *Crawford* v. *Washington*, 541 U.S. 36 [2004]." *Id.* at 2542. Thus, for constitutional analysis, the *Crawford* decision was a presage to *Melendez-Diaz*. Indeed, in *Crawford*, the court delineated the confrontational problem inherent in the admission of out-of-court affidavits, such as the attested affidavits of drug analysis involved here. Specifically, in *Crawford*, the Court described such affidavits as within the class of "core" testimonial statements, subject to confrontation rights, and wrote as follows.

> "The constitutional text, like the history underlying the common-law right of confrontation, thus reflects an especially acute concern with a specific type of out-of-court statement.
>
> "Various formulations of this *core class of 'testimonial' statements exist*: '*ex parte* in-court testimony or its functional equivalent — that is, *material such as affidavits*, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially' [and] '*extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits*, depositions, prior testimony, or confessions.'"

*Crawford*, 541 U.S. at 51-52 (citations and quotations omitted) (emphases added). Given these statements in *Crawford*, it cannot be gainsaid that a new line was drawn delineating that the admission at trial of affidavits, including the affidavits at issue here in the form of out-of-court drug analysis certificates, without in-court testimony by the analysts violated a defendant's right of confrontation under the Sixth Amendment to the United States Constitution. This constitutional doctrine announced in *Crawford* is a new rule which has retroactive effect to all pending cases. "Where the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule [is] given complete retroactive effect." *Ivan V.* v. *New York*, 407 U.S. 203, 204 (1972), quoting from *Williams* v. *United States*, 401 U.S. 646, 653 (1971). "[A] new rule

for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." *Griffith* v. *Kentucky*, 479 U.S. 314, 328 (1987).

But, important to the issue presented in this case, Federal retroactivity looks backwards. With such retroactivity, irrespective of whether there was an objection at trial, the higher standard of harmless beyond a reasonable doubt for appellate review of issues arising out of the admission of affidavits of drug analysis is preserved *in trials conducted prior to Crawford*, provided that the trial is the subject of a pending appeal on direct review or not yet final, as of the date, March 8, 2004, on which *Crawford* was decided. Conversely, Federal retroactivity, by definition, is not forward-looking[5] and does not preserve the harmless

[5]The framework for resolution of the Federal question of full retroactivity — with no objection being required to preserve the harmless error standard — is very clearly demonstrated in precedent directed to the new Federal constitutional doctrine concerning the unconstitutionality of burden-shifting instructions in self-defense cases decided after *Mullaney* v *Wilbur*, 421 U.S. 684 (1975). In *Hankerson* v. *North Carolina*, 432 U.S. 233, 243 (1977), the Court held that *Mullaney* was to be given full retroactive effect, in accord with *Griffith* v. *Kentucky, supra*, and *Ivan V.* v. *New York, supra*, which are quoted in the text above. However, in *Hankerson*, the Supreme Court also held that the States could elect to carve an exception to full retroactivity. "The States, if they wish, may be able to insulate past convictions [from full retroactive review] by enforcing the normal and valid rule that failure to object to a jury instruction is a waiver of any claim of error." *Hankerson, supra* at 244 n.8.

After the *Mullaney* and *Hankerson* decisions, there followed a series of Massachusetts cases addressing the retroactive preservation of appellate rights in Massachusetts cases pending on direct appeal, but which had been tried before *Mullaney* was decided. The first such case was *Commonwealth* v. *Stokes*, 374 Mass. 583, 589-590 (1978). In *Stokes*, the Supreme Judicial Court afforded full retroactivity to *Mullaney* and declined to accept the *Hankerson* invitation to carve out a State procedural bar based on failure to object. "[W]ith respect to trials occurring before *Mullaney* [as the announcement of the new constitutional doctrine], a specific objection to the judge's instructions on burden of proof need not be shown in order to secure appellate review." *Stokes, supra* at 590. This *Stokes* ruling was followed — indeed *Stokes* was cited or quoted, and *Hankerson* was cited or quoted — in an ensuing series of cases dealing with the retroactivity of the new Federal constitutional doctrine on jury instructions. See, e.g., *Commonwealth* v. *Collins*, 374 Mass. 596, 599 (1978); *Connolly* v. *Commonwealth*, 377 Mass. 527, 530 n.8 (1979); *DeJoinville* v. *Commonwealth*, 381 Mass. 246, 248 n.3 (1980);

error standard in trials where there is a failure to object after a new Federal rule or doctrine is on the constitutional law books as precedent of the United States Supreme Court. Thus, here, *in trials conducted after Crawford,* retroactivity is a legal and temporal impossibility, and a trial objection would be required to invoke the harmless error standard of review with respect to the admission of out-of-court affidavits, including affidavits that are drug analysis certificates, such as are at issue here.

There was no such objection in this case, and, therefore, the harmless error standard of appellate review would not apply to this post-*Crawford* trial, absent some exception to excuse the lack of objection. Rather, the standard governing appellate review would be the traditional one for nonpreserved error, i.e., the substantial risk of a miscarriage of justice standard.

---

*Commonwealth* v. *Repoza,* 400 Mass. 516, 520, cert. denied, 484 U.S. 935 (1987).

Of interest to the issues here presented, certain of the cases in this line are occasionally cited incorrectly in connection with the "clairvoyance exception" addressed in the text. These Federal retroactivity cases are not about the Massachusetts clairvoyance exception for collateral appeals, an exception discussed in the text above. What may account for this misunderstanding is a single reference in *Commonwealth* v. *Repoza, supra.* After repeating the oft-quoted sentence from *Hankerson* concerning a potential State procedural bar to the full retroactivity of *Mullaney,* in *Repoza* the word "clairvoyant" is evocatively used to confirm the reason for the Massachusetts declination to adopt such a procedural bar. Although the *Hankerson* quotation embedded in *Repoza* is stated above, to illustrate this point about the potential confusion from the miscitation of these Federal cases, the full context for this singular reference to "clairvoyant" in the *Repoza* context bears repeating here.

> "[T]he Supreme Court . . . has ruled that, in cases involving burden-shifting instructions, States may 'insulate past convictions by enforcing the normal and valid rule that failure to object to a jury instruction is a waiver of any claim of error.' *Hankerson, supra* at 244 n.8. . . . As a matter of State law, we have determined that we would not require lawyers to be *clairvoyant* and to object to instructions not yet identified as constitutional error."

*Id.* at 520 (emphasis added). As the full quotation shows, the word "clairvoyant" in *Repoza* is not used to create any new exception negating the need to state an objection in a trial conducted *after* a new Federal constitutional rule or doctrine is announced — which is the posture of the instant appeal. And, the word "clairvoyant" is not about the Massachusetts "clairvoyance exception." Rather, the word "clairvoyant" in *Repoza* is about Federal retroactivity and not imposing a *Hankerson*-suggested procedural bar.

The defendant cites the so-called "clairvoyance exception"[6] to bring this post-*Crawford* trial within the harmless error standard of review. Because the defendant invokes that exception and because that exception was referenced in the recent Supreme Judicial Court decision of *Commonwealth* v. *Connolly*, 454 Mass. 808, 830-831 (2009), see note 6, *supra*, the term

---

[6]In *Commonwealth* v. *Connolly*, 454 Mass. 808, 829-830 (2009), the Supreme Judicial Court noted the procedural history of *Crawford* v. *Washington*, 541 U.S. 36 (2004), *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527 (2009), and *Commonwealth* v. *Verde*, 444 Mass. 279 (2008), in considering whether the clairvoyance exception might apply. However, because it was not necessary to resolve the appropriate standard of review in *Connolly*, the court did not decide the question whether the clairvoyance exception compelled the higher standard of review of beyond a reasonable doubt. In *Connolly*, the court wrote as follows.

"The defendant did not raise the confrontation issue at trial. Trial in this case was in August, 2006. On May 19, 2005, this court, in *Commonwealth* v. *Verde*, 444 Mass. 279, 280, 283-284 (2005), held that drug certificates of analysis did not implicate the confrontation clause and were not affected by the decision in *Crawford* v. *Washington*, 541 U.S. 36 (2004). The Supreme Court did not grant certiorari in *Melendez-Diaz* until March 17, 2008, long after the defendant's trial. Although it is not free of doubt, the 'clairvoyance' exception may apply in these circumstances. See *Commonwealth* v. *Randolph*, 438 Mass. 290, 295 (2002), quoting *Commonwealth* v. *Rembiszewski*, 391 Mass. 123 [1984] (' "clairvoyance" exception . . . applies to errors of a constitutional dimension "when the constitutional theory on which the defendant has relied was not sufficiently developed at the time of trial or direct appeal to afford the defendant a genuine opportunity to raise the claim at those junctures of the case" '). Arguably, the defendant could not reasonably have been expected to assert at trial a constitutional proposition that we had so recently rejected; it would therefore follow that he could raise the issue now and have us apply the standard for constitutional error, i.e., whether the error was harmless beyond a reasonable doubt.

"However, we need not resolve the question of the appropriate standard because, even assuming that the standard more favorable to the defendant applies, we conclude that the error was harmless beyond a reasonable doubt."

*Connolly*, 454 Mass. at 830-831. In this case, the issue of the clairvoyance exception was fully briefed, and the question of the standard of review is critical to the defendant. In contrast to *Connolly*, the principal issue in this case is not the weight of the cocaine for trafficking purposes, but rather whether the substance was, in fact, cocaine. This case, then, presents the issue of the standard of review not reached in *Connolly* because, if the harmless beyond a reasonable doubt standard were applied, we would reverse the defendant's convictions.

"clairvoyance exception" will, from time to time, be referenced herein. However, there are reasons that the "clairvoyance exception" is not the appropriate frame of reference to resolve the Federal question presented in this direct appeal. See note 5, *supra.* As the Supreme Judicial Court observed in the recent *Connolly* case, the question whether the "clairvoyance exception" applies "is not free from doubt." *Connolly, supra* at 830.

One problem giving rise to such doubt is that the clairvoyance exception has not developed principally in connection with direct appeals, but rather has been directed to collateral appeals, which are litigated by the procedural means of a motion for a new trial pursuant to Mass.R.Crim.P. 30, as appearing in 435 Mass. 1501 (2001). In the context of such collateral postconviction appeals, the clairvoyance exception has evolved as an exception to waiver — that is, an exception to waiver of a constitutional point of law where the asserted claim of error was not objected to at trial or raised in the direct appeal. This distinction, and the general nonapplicability of the clairvoyance exception in direct appeals, is expressed in *Commonwealth* v. *Randolph,* 438 Mass. 290 (2002), as follows:

> "The third [exception to waiver in postconviction review by failure to object] is known as the 'clairvoyance' exception, and applies to errors of a constitutional dimension 'when the constitutional theory on which the defendant has relied *was not sufficiently developed at the time of trial or direct appeal* to afford the defendant a genuine opportunity to raise his claim at those junctures of the case.' *Commonwealth* v. *Rembiszewski,* 391 Mass. 123, 126 (1984). In these circumstances we review the claim as if it had been properly preserved." (Emphasis added).

*Id.* at 295.

Given that the clairvoyance exception is generally considered in collateral proceedings after conviction and after direct appeal, a majority of this court have analyzed the question presented in this direct appeal as one of Federal law (see note 5, *supra,* and accompanying text).[7] As previously discussed, in direct appeals, this Federal retroactivity law focuses not on the clairvoy-

---

[7]We note two direct appeals (which are, in turn, cited in later cases) in

ance exception, but rather on the point in time when the Sixth Amendment confrontational bar to the admission of affidavits emerged as a new Federal constitutional rule. From this perspective, this court is led to the view that the controlling date is March 8, 2004, the date of the *Crawford* decision. Thus, in a trial conducted before this *Crawford* date, and for which a direct appeal is pending and no final judgment has issued, full retroactivity as a matter of Federal law applies, and the harmless error standard of review governs notwithstanding the lack of trial objection to the admission of an affidavit of drug analysis. See *Griffith* v. *Kentucky, supra*; *Ivan V.* v. *New York, supra.* See also *Mullaney* v. *Wilbur, supra*; *Hankerson* v. *North Carolina, supra.* For trials which were conducted after the *Crawford* date of March 8, 2004, and for which direct appeals are pending and not in final judgment, in order to reach the higher harmless error standard of review, a trial objection is required. If one was not posed, this court is led to the view that the substantial risk

which the words "clairvoyant" or "clairvoyance exception" appear. They are *Commonwealth* v. *Bowler*, 407 Mass. 304 (1990), and *Commonwealth* v. *D'Agostino*, 421 Mass. 281 (1995). It is unclear whether these two direct appeals actually invoke the "clairvoyance exception." *Bowler* uses the words "clairvoyant" and "clairvoyance" but then cites cases referred to in note 5, *supra*, dealing with Federal retroactivity. *D'Agostino* uses the word "clairvoyant," but then, apparently in error, describes *Bowler* as declining to apply the "clairvoyance exception" — a term that does not appear in *Bowler*. In any event, both direct appeals address an issue different from that presented here because both appeals involve jury instructions and Massachusetts constitutional law, not Federal retroactivity law. Indeed, in *D'Agostino*, the Supreme Judicial Court notes the difference and points as well to an interesting aspect of the Federal retroactivity analysis at issue here.

> "We are concerned in this case with the possible retroactive application of a new criminal rule based on art. 12, rather than on a provision of the United States Constitution. The statement in *Commonwealth* v. *Figueroa*, 413 Mass. 193, 202 (1992), concerning when retroactive application of a new criminal rule is required, follows the Federal rule set out in *Griffith* v. *Kentucky*, 479 U.S. 314 (1987), and related cases. We have previously expressed some doubt as to whether the *Griffith* decision sets the standard for retroactive application of a new criminal rule based on a State constitutional provision. See *Commonwealth* v. *Bowler*, 407 Mass. 304, 306, 553 (1990). . . . The parties have not suggested that we should adopt a rule for retroactivity differing from the Federal rule. Thus, we need not, and do not, consider that question."

*D'Agostino, supra* at 284 n.12.

of a miscarriage of justice appellate standard of review governs such nonpreserved error. The clairvoyance exception for collateral appeals would not, we believe, alter these determinations.

Even if this court were to consider the clairvoyance exception in a direct appeal involving Federal retroactivity law, we would not find that exception to excuse the failure of trial counsel to object to the admission of the drug certificates and to support the harmless error standard.[8] The Federal law was sufficiently developed at the time of trial to give defense counsel notice of the confrontation issue looming with respect to the drug certificates. Thus, the clairvoyance exception would not save the failure to object because *Crawford* did provide notice that the admission of out-of-court generated affidavits — such as the four drug certificates prepared for litigation and admitted in this case, without testimony by the analysts — was fraught with Federal confrontation error. On this point, *Crawford* limned a prelude of what out-of-court "core testimonial statements" would be deemed violative of the confrontation clause, including but not limited to, "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits." *Crawford*, 541 U.S. at 51-52.

Notwithstanding this highlighting in *Crawford*, counsel cites to *Commonwealth* v. *Verde*, 444 Mass. 279, 283-284 (2005), as providing reason why an objection based on the Federal confrontation clause was not forthcoming in this trial. In *Verde*, the Supreme Judicial Court held that the admission of a drug certificate in lieu of the analyst's testimony was admissible as a business record, and, therefore, the introduction of the record as evidence at trial not did not infringe upon confrontation rights. The *Verde* case, it is suggested, obviated the need to raise a Sixth Amendment based objection to the admission of the drug certificates. But, this theory is problematic because, when confrontation rights under the Sixth Amendment to the United States Constitution are implicated, a State court decision analyzing

---

[8]That the clairvoyance exception would not generally be applicable while direct appeals are pending makes logical sense. This is because, in cases on direct appeal, the Federal retroactivity doctrine, see note 5, *supra*, would apply and would render appellate review subject to the harmless error standard, irrespective of the lack of objection, and without the need for any clairvoyance exception.

those rights would not provide a final and failsafe ground for not interposing a federally based confrontation challenge and objection. The highest court of a State is entitled to great deference and respect, yet a State court does not determine the last and final word on a Sixth Amendment confrontation clause issue — a point of supremacy law on which the Supreme Judicial Court has written. Where "[t]he issue before us is one of Federal law, . . . we are bound by the Supreme Court's construction of Miranda's scope [and one might add the scope of the Sixth Amendment confrontation clause]. '[A] state court can neither add to nor subtract from the mandates of the United States Constitution.' " *Commonwealth* v. *Bryant*, 390 Mass. 729, 741 (1984), quoting from *North Carolina* v. *Butler*, 441 U.S. 369, 376 (1971). "We are of course bound by decisions of the Supreme Court on questions of Federal law." *Commonwealth* v. *Masskow*, 362 Mass. 662, 667 (1972). Accordingly, the decision in *Verde* cannot be construed to have erased the *Crawford* notice of the Federal constitutional issue. Thus, *Verde*, standing alone, does not support or excuse a failure to object and challenge the admission of drug certificates under the Sixth Amendment confrontation clause.

Indeed, in many trials after the *Verde* decision, defense counsel objected to the introduction of drug certificates on the basis of *Crawford*. The practice of defense counsel posting trial objections to the introduction of out-of-court declarations and affidavits of analysis, post-*Crawford* and post-*Verde*, is reflected in direct appeals before this court.[9,10]

In addition and to the same end, many defense counsel across

---

[9]We have examined sixty-two cases decided by our court during the past term or currently pending on our docket, which are appeals from cases tried after *Verde* was decided and before the Supreme Court granted certiorari in *Melendez-Diaz*. Our review reveals that the defendant preserved a confrontation clause claim objection in approximately thirty-one of them, based on the admission of either ballistics certificates regarding the operability of a firearm or certificates of analysis of a controlled substance (we say "approximately" because the parties dispute in several of the cases whether the defendant's objection at trial was based on the confrontation clause). The frequency with which such objections were raised in other cases tried during the same time period suggests that the constitutional theory on which *Melendez-Diaz* rests may indeed have been sufficiently developed to afford the defendant a genuine opportunity to raise it, had he wished to do so.

[10]The dissent addresses the clairvoyance exception. Even apart from the

the country challenged the admissibility of such evidence in State courts. A virtual drumbeat of constitutional challenges is cataloged in the *Melendez-Diaz* petitions for certiorari.[11] What is significant about this course of criminal litigation is that it provides further evidence that the Sixth Amendment constitutional issue concerning the admission of out-of-court affidavits and drug certificates (and other offense elements such as ballistics analysis) was hotly contested. In effect, after *Crawford*, challenges were mounting, and any evidentiary protocol allowing the admission of a drug certificate in lieu of testimony was under siege.

Notwithstanding what was an active, indeed, intense Sixth Amendment legal issue, no objection on these Federal constitutional grounds was interposed in this case. Therefore, the error in the admission of the drug certificates is reviewed in this appeal to determine whether there was a substantial risk of a miscarriage of justice.

We determine such a risk was not presented. In this case, there was testimony by the undercover officer that he requested to purchase cocaine from the defendant by its street name and was then given the substance in question in exchange for money, which supports the inference that the substances from the drug transactions, were, in fact, cocaine.[12] "Proof that a substance is a particular drug need not be made by chemical analysis and

reasons why the majority concludes that the clairvoyance exception is inapplicable, to be noted is that, of the ten cases cited in the dissent, seven were tried before *Crawford* was decided.

[11]See, e.g., Motion for Leave to File Brief as Amici Curiae by Professors Pamela R. Metzger, Jennifer L. Mnookin, and Andrew E. Taslitz, the National Association of Criminal Defense Lawyers, the Innocence Project, the National College for DUI Defense, the Committee for Public Counsel Services, and the Massachusetts Association of Criminal Defense Lawyers in Support of Petitioner on Petition for Writ of Certiorari in *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527 (2001).

[12]The following questions and answers are taken from the direct testimony of State Trooper Henot Rivera, in reference to the July 7, transaction:

> *Q*: "When you saw the defendant in that apartment, could you tell us what happened?"
>
> *A*: "I was introduced to him and I then ordered crack cocaine."
>
> *Q*: "Tell us how you order that; what words did you use?"

may be made by circumstantial evidence." *Commonwealth* v. *Dawson*, 399 Mass. 465, 467 (1987). See *Commonwealth* v. *Alisha A.*, 56 Mass. App. Ct. 311, 313-314 (2002) ("The jury reasonably could have inferred that the distributed substance was Klonopin from the juvenile's statements to [a witness] the evening before the incident that she would be bringing Klonopin pills into school and distributing them to others . . ."). Moreover, the evidence that was sufficient to prove constructive possession, discussed earlier, along with testimony by the officers who searched 4L, was sufficient circumstantial evidence to prove that the substance possessed was cocaine. Given there was circumstantial evidence that supported proof of the element of each crime, we find that any error was insufficient to materially influence the verdict.[13]

In the circumstances, the justices of this court have determined

---

A: "I used the term for an eight-ball which was an A of crack cocaine [*sic*]?"

Q: "Now, let me stop you there. Can you tell the Court what your formal education is in the area of narcotics?"

A: "Well, I've been with the task force now for approximately nine years. And I've received training through the Massachusetts Criminal Justice Training Council. I received training through the DEA. I've received some training with the Massachusetts State Police."

Q: "And you're familiar with crack cocaine and how its sold on the streets in Springfield?"

A: "Yes."

The following questions and answers are taken from the direct testimony of State Trooper Henot Rivera, in reference to the October 18, transaction:

A: "I asked Jorge Vasquez for an eight-ball of crack, and at that point he didn't have an eight-ball of crack. He had a smaller amount, which were 16ths. And he called down to that subject I encountered at ground level by the name of Munchy. He summonsed him up to bring an eight-ball of crack for me."

[13]We have also considered, but do not see any basis for reversal in, other issues advanced by the defendant, including: the admission of certain exhibits containing narcotics evidence; the judge's failure to recuse herself sua sponte despite taking the earlier guilty plea of a defense witness; and testimony concerning correspondence from an informant regarding the defendant's identification.

that the efficient administration of justice will be served by reporting the third issue of this opinion, "3. *Issues involving the drug certificates*," which is joined by a majority of the justices, together with the dissenting opinion, which is joined by other justices, to the Supreme Judicial Court. G. L. c. 211A, § 12.

*Judgments affirmed.*

DREBEN, J. (dissenting). On May 19, 2005, the highest court in the Commonwealth decided in *Commonwealth* v. *Verde*, 444 Mass. 279 (2005), after extensive analysis of *Crawford* v. *Washington*, 541 U.S. 36 (2004), that even where the defendant offered evidence to rebut a drug certificate, the analyst was not required to testify. In two subsequent cases prior to the defendant's convictions, the Supreme Judicial Court cited the *Verde* case with approval. See *Commonwealth* v. *DeOliveira*, 447 Mass 56, 67 (2006); *Commonwealth* v. *Maloney*, 447 Mass. 577, 582, 590, 592 (2006). This court, also prior to the defendant's convictions and relying on *Verde*, rejected challenges to certificates based on *Crawford* in ten decisions under Appeals Court rule 1:28[1] and in one published opinion.[2] In view of the state of the law at the time of the defendant's trial, the defendant should be excused for having failed to foresee that the United States Supreme Court might disagree with our recent firmly established precedent. See *Commonwealth* v. *D'Agostino*, 421 Mass. 281, 285 (1995) (discussing the "so-called clairvoyance exception"). I do not think he should have been required to make a futile objection.

Unlike the situation in *Commonwealth* v. *Connolly*, 454 Mass.

[1]See *Commonwealth* v. *Medina*, 64 Mass. App. Ct. 1107 (2005); *Commonwealth* v. *Squires*, 64 Mass. App. Ct. 1110 (2005); *Commonwealth* v. *Likely*, 65 Mass. App. Ct. 1103 (2005); *Commonwealth* v. *Ventura*, 65 Mass. App. Ct. 1105 (2005); *Commonwealth* v. *Cruz*, 65 Mass. App. Ct. 1117 (2006); *Commonwealth* v. *Franco*, 66 Mass. App. Ct. 1106 (2006); *Commonwealth* v. *Knowles*, 66 Mass. App. Ct. 1106 (2006); *Commonwealth* v. *Santos*, 67 Mass. App. Ct. 1110 (2006); *Commonwealth* v. *Jessamy*, 67 Mass. App. Ct. 1114 (2006); *Commonwealth* v. *Kindell*, 67 Mass. App. Ct. 1121 (2006).

[2]See *Commonwealth* v. *Crapps*, 64 Mass. App. Ct. 915, 916 (2005). See also *Commonwealth* v. *Lampron*, 65 Mass. App. Ct. 340, 346 n.6 (2005) (acknowledging rule in *Verde*).

808, 830 (2009), the error here was not harmless beyond a reasonable doubt. Therefore, I would remand for a new trial. I respectfully dissent.